647 A.2d 454

ALBERT COX, AS EXECUTOR OF THE ESTATE OF WILLIAM COX, PLAINTIFF–APPELLANT, v. SEARS ROEBUCK & COMPANY, DEFENDANT–RESPONDENT.

Argued March 15, 1994—Decided September 15, 1994.

4

*Fredric J. Gross* argued the cause for appellant (*Mr. Gross,* attorney; *Dennis K. Kuroishi,* of counsel).

*Allen S. Zeller* argued the cause for respondent (*Freeman, Zeller and Bryant,* attorneys; *Mr. Zeller* and *James W. Burns,* on the briefs).

*Mary K. Potter,* Deputy Attorney General, argued the cause for *amicus curiae* Attorney General of New Jersey (*Deborah T. Poritz,* Attorney General, attorney; *Andrea M. Silkowitz,* Assistant Attorney General, of counsel).

*Madeline L. Houston,* Director of Litigation, submitted a brief on behalf of *amicus curiae* Passaic County Legal Aid Society.

The opinion of the Court was delivered by

CLIFFORD, J.

This appeal, here as of right because of a dissent in the Appellate Division, *R.* 2:2–1(a)(2), presents important questions under the Consumer Fraud Act, *N.J.S.A.* 56:8–1 to –20 (the Act). William Cox contracted with defendant for renovations to the kitchen of his home. (Inasmuch as William Cox died after the institution of this suit, his son, as executor of his father's estate, has been substituted as plaintiff. References to "plaintiff" in this opinion, however, are to the original plaintiff, William Cox.) Dissatisfied with the work, plaintiff sued defendant on theories of, among others, breach of contract and violations of the Act. The jury found for plaintiff on both the contract and consumer-fraud causes of action, but the trial court entered judgment in defendant's favor notwithstanding the verdict.

On plaintiff's appeal a divided panel of the Appellate Division affirmed in an unreported opinion. The court ruled that plaintiff had not established that defendant's conduct violated the Act and had not demonstrated any loss entitling him to damages. Because we conclude that the majority below erred in respect of both those rulings, we reverse.

I

In August 1988, William Cox, then eighty-two years old, embarked on a renovation project on the kitchen of his forty-year-old house in Clementon, New Jersey, which he had purchased in 1987. In that connection he sought the services of defendant, Sears, Roebuck & Company (Sears). After meeting with a Sears representative and selecting the items he wanted installed, Cox signed a home-repair-proposal contract and financed the entire $7,295.69 cost of the transaction on his Sears credit card. Sears promised plaintiff "satisfaction guaranteed or your money back."

Cox wanted to change the appearance of his kitchen. The contract required Sears to remove old cabinets and install new ones, and to install a vinyl floor, a countertop, a sink and faucet with a full backsplash, wallpaper, a microwave hood, a garbage

disposal, and one additional electrical outlet. The contract also required Sears to re-install all appliances, to sheetrock walls as necessary, to cover the exhaust fan, and to vent the microwave hood outside.

The bulk of the renovations began on December 5, 1988. On that date, Cox signed an "AUTHORIZATION FOR CHANGE OF SPECIFICATIONS" that Sears' subcontractor presented for an additional $1,500 worth of work on the kitchen. That change order provided for rewiring of the kitchen and updating of the electrical work. Sears worked on the kitchen for approximately three weeks, and on December 23, 1988, plaintiff signed a statement that the renovations up to that point had been completed to his satisfaction.

Ultimately, however, Cox was not at all satisfied with Sears' work. During 1989, he made several telephone complaints to Sears about inadequacies in the job relating to the microwave hood and vent, the cabinets, and the vinyl flooring. A Sears repairman made at least four trips to plaintiff's home to address the problems. After Cox retained legal counsel around October 1989, Sears made no further repairs to the kitchen.

Plaintiff thereafter sued Sears for breach of contract and violation of the Consumer Fraud Act, and Sears counterclaimed for the full contract price, totalling $8,795.69.

The trial record discloses proof from which the jury could have concluded that Sears' work was deficient in that the resulting appearance of the renovations was unattractive, that Sears' rewiring of the kitchen was incomplete and substandard, and that Sears' work failed to comply with building and electrical codes and home-repair regulations. The microwave hood was installed in a lopsided manner and contained a large crack. The door to the microwave slammed shut if not held open. The wallpaper did not cover all wall areas and did not line up evenly with the cabinets. The wood coloring of the cabinets and the trim did not match, and one cabinet had cracks in it. The glue in the cabinet joints was visible and the joints were not clean. Sears improperly re-

installed the moldings so that they were not flush to the ceiling or walls. The vinyl flooring buckled, and Sears did not install cove molding to keep it in place. The garbage-disposal unit leaked. The microwave vent recirculated exhaust back into the house instead of outside. (Sears has since repaired the vent, and Cox hired a plumber to repair the disposal.)

Concerning the electrical-wiring work, plaintiff produced as expert witnesses an electrical sub-code inspector (the inspector) and an electrical contractor and installer (the contractor). The inspector concluded that the entire kitchen had not in fact been rewired. Much of the old wiring remained, and the new wiring did not meet the 1988 building-code requirements. In fact, the contractor explained that what wiring had been completed had been installed haphazardly and unprofessionally, resulting in dangerous, concealed defects. For example, several new outlets accepting three-prong plugs, which must be grounded for safety purposes, had not been grounded. Similarly, the polarity of several wires in the receptacle box were reversed, creating a risk of electric shock.

In addition, plaintiff produced witnesses who testified that for almost all the kitchen renovations covered by the contract, the municipality required building and electrical permits. For example, Clementon's building inspector explained that the removal of old cabinets and installation of new ones required a building permit. Likewise, the installation of new outlets or lights, a garbage disposal, an exhaust fan, or any other rewiring could not be performed without an electrical permit. The contractor agreed that electrical, plumbing, building, and construction permits were needed for Cox's renovation. However, no building or electrical permits had ever been requested or issued for the Cox residence before, during, or after Sears' work on plaintiff's kitchen in 1988 or 1989.

The jury returned a verdict in plaintiff's favor on both the breach-of-contract and the Consumer Fraud Act claims. In respect of the contract claim, the jury answered special interrogato-

ries to indicate its finding that Sears had not substantially performed its obligations under the contract and that that failure was the proximate cause of damages to Cox. It concluded that the damages amounted to the full contract price of $8,795.69 and that Sears was entitled to a credit of only $238 for its work. Finally, it found that Sears had failed to correct the deficiencies in its performance and that Cox was entitled to receive $6,830 to complete or repair the work in his kitchen.

Concerning the consumer-fraud claim, the jury wrote on the verdict sheet that it found that Sears had violated the Act through its "failure to have competent contractors install cabinet work, plumbing and electrical wiring in a safe, professional manner and in accordance with appropriate regulations." The jury further concluded that as a proximate result of that violation, plaintiff had incurred damages in the amount of $6,830.

Sears moved for judgment notwithstanding the verdict, asserting that the conduct itemized in the jury's recital of what constituted consumer fraud did not in fact violate the Act. Initially the trial court denied the motion and entered judgment of $6,830 for Cox, trebling it to $20,490 as required by *N.J.S.A.* 56:8–19, and dismissed Sears' counterclaim. Defendant then renewed its motion, and plaintiff filed a cross-motion seeking costs and attorneys' fees in the amount of $56,840.57. The trial court then granted defendant's motion for judgment notwithstanding the verdict and entered a "no cause of action" in favor of Sears on both the contract and Consumer Fraud Act counts. The court left in place its order dismissing Sears' counterclaim and ordered Sears to remove any charges to plaintiff's Sears charge account and any lien on plaintiff's house.

In a letter opinion the trial court concluded that plaintiff had "failed to prove any ascertainable damage or loss as a result of [Sears'] lack of substantial performance under its contract or [Sears'] violation of the Consumer Fraud Act." It correctly noted that to recover under the Act, a private plaintiff such as Cox must prove loss, and that a breach-of-contract claim also required proof

of damages. The court found that the benefit of Cox's bargain was to have Sears renovate his kitchen according to the contract specifications for $8,795.69. Although plaintiff had not paid any money to Sears, he would have to spend $7,130 (a figure different from the jury's calculation) to complete and repair the renovations. The court concluded that because "the amount paid plus the amount needed to put the kitchen in the required condition is less than the contract price," and because the proper measure of damages is the "benefit of the bargain," "it follows that [plaintiff] has not been damaged by [defendant's] breach." The court also rejected plaintiff's claim that the impairment of his credit and Sears' recorded lien on his house constituted sufficient losses under the Act, pointing out that plaintiff had failed to demonstrate any difficulty in obtaining credit at a favorable rate. Last, the trial court noted that Cox had continued to enjoy the use of Sears' labor and materials since installation. Therefore, the court concluded, plaintiff had proved neither consumer-fraud nor contract damages and could not recover under either theory.

Accordingly, the court denied plaintiff's attorney's application for attorneys' fees, relying on *Martin v. American Appliance*, 174 *N.J.Super.* 382, 383–86, 416 *A.2d* 933 (Law Div.1980), which held that a victim of consumer fraud who does not prove a loss cannot recover attorneys' fees. (*Martin* has since been overruled by *Performance Leasing Corp. v. Irwin Lincoln–Mercury*, 262 *N.J.Super.* 23, 619 *A.2d* 1024 (App.Div.), *certif. denied*, 133 *N.J.* 443, 627 *A.2d* 1148 (1993).)

The majority in the Appellate Division affirmed substantially for the reasons given by the trial court in its letter opinion. The majority first found that defendant's conduct supported a breach-of-contract claim but not a consumer-fraud claim. The court explained that "[c]onsumer fraud involves at the very least an 'unconscionable commercial practice,'" (quoting *N.J.S.A.* 56:8–2 and *Skeer v. EMK Motors, Inc.*, 187 *N.J.Super.* 465, 470, 455 *A.2d* 508 (App.Div.1982)), and that "[a] breach of warranty or a breach

of contract alone is not unconscionable and does not violate the Consumer Fraud Act."

Next, the majority confirmed that because the evidence supported the jury's finding that Sears' failure to perform amounted to a breach of contract, the jury's decision to allow Sears nothing under the contract and to award it a credit of only $238 for the value of the work properly performed was appropriate. The majority further concluded that the jury's award of "compensatory damages" of $6,830 to Cox properly put him in as good a position as he would have enjoyed had performance been rendered as promised. (We are unable to unravel the paradox of the Appellate Division's apparent approval of the jury award to plaintiff of $6,830 in "compensatory damages," with a credit to defendant of $238, with its judgment affirming the trial court's entry of judgment for defendant notwithstanding the verdict, the effect of which, of course, was to wipe out plaintiff's verdict. Because we sit to review the Appellate Division's judgment, not its opinion, we proceed on the assumption that the court below determined that the trial court's entry of judgment for defendant was the correct result. Moreover, the riddle of is of no moment for purposes of this appeal, inasmuch as plaintiff does not raise any issues concerning his breach-of-contract claim but rather confines his statement of questions presented and his argument to issues under the Act.)

The majority also found that "the facts of this typical breach of contract case do not support a recovery for consumer fraud for the further reason that plaintiff has suffered no loss." The court noted that Cox has been living with the kitchen since Sears installed it and that the entire transaction has cost plaintiff nothing. It also found that Sears had never demanded payment from plaintiff. It reasoned that to allow plaintiff to recover three times the cost of completing the renovations "would distort the Consumer Fraud Act beyond recognition." The majority added that contrary to the dissent's reasoning, plaintiff did not incur a "legal obligation" constituting a loss sufficient to establish his

consumer-fraud claim because plaintiff could not incur such an obligation absent Sears' performance.

The dissenter below argued that the majority had usurped the province of the jury and had misinterpreted both the Consumer Fraud Act and contract-damage principles. According to the dissent, the jury correctly calculated the contract damages because the verdict awarded plaintiff a sum, $6,830, that put him in the position he would have been in had Sears performed the contract. Next, the dissent noted that the jury's verdict "both implicitly and explicitly supports the conclusion that Sears engaged in unconscionable commercial practice," and the jury award "provides plaintiff with the kitchen he would have received from an accurate performance of Sears' renovation contract." On the question of damages the dissent rejected the conclusion that plaintiff had not suffered any loss due to Sears' unlawful conduct, pointing out that a charge on a credit card is a legal obligation amounting to a "loss" under the Act. It noted that many sharp businesses persuade consumers to sign contracts or to pay with credit cards and that those consumers may later refuse to pay, but "the fraud [is] accomplished when the consumer sign[s] what otherwise would be a binding obligation." The dissent concluded that Cox had "amply proved" a loss as contemplated by the Act. Concerning treble damages and attorneys' fees, the dissent observed that "absent compelling circumstances to the contrary," a court should award treble damages, attorneys' fees, filing fees, and costs to consumer-fraud plaintiffs.

Addressing the damages issue, the dissenter below claimed that Sears' lack of substantial performance entitled plaintiff to damages in the amount of the full contract price; thus, he concluded that the jury had properly extinguished Cox's indebtedness to Sears. The dissenter further argued that if plaintiff had paid cash rather than charge the cost of the renovations to his credit card, the dissenter would have calculated the consumer-fraud damages as the cash paid, trebled. The cancellation of the debt, according to the dissent, was the equivalent of the return of the cash

payment; therefore, the dissent reasoned, the trial court should have awarded Cox an additional sum equal to double the contract price. It observed that "[b]y limiting plaintiff's remedy to the cancellation of the charge, the judge in effect has nullified the jury's consumer fraud verdict, and provided only breach of contract damages." The dissent concluded that to dispose of this case properly, the trial court should have cancelled Cox's contract indebtedness, denied Sears any recovery under the contract, and awarded plaintiff his cost of repair as determined by the jury, $6,830, trebled to $20,490, plus reasonable attorneys' fees, filing fees, and costs. Finally, the dissent concluded that even if Cox had not suffered a "loss" under the Act, the court nevertheless should have awarded him reasonable attorneys' fees.

The initial question that plaintiff raises on this appeal is whether Sears' conduct constituted an "unlawful practice" under the Act. If so, we must determine if plaintiff suffered "any ascertainable loss" due to Sears' conduct. The posture of the case—the Appellate Division's affirmance of the trial court's setting aside a jury verdict for plaintiff and entering judgment for defendant notwithstanding that verdict—requires that we accord plaintiff the benefit of all reasonable and legitimate inferences to be drawn from the evidence. Under that standard we are satisfied that Sears' conduct did constitute an unlawful practice and that plaintiff did suffer a loss caused by Sears' violation of the Act. Finally, we conclude that plaintiff is entitled to recover attorneys' fees, filing fees, and costs under the Act.

## II

### —A—

In 1960, the Legislature passed the Consumer Fraud Act "to permit the Attorney General to combat the increasingly widespread practice of defrauding the consumer." Senate Committee, *Statement to the Senate Bill No. 199* (1960). The Act conferred on the Attorney General the power to investigate consumer-fraud

complaints and promulgate rules and regulations that have the force of law. *N.J.S.A.* 56:8–4. In 1971, the Legislature amended the Act to "give New Jersey one of the strongest consumer protection laws in the nation." *Governor's Press Release for Assembly Bill No. 2402,* at 1 (Apr. 19, 1971). The Legislature expanded the definition of "unlawful practice" to include "unconscionable commercial practices" and broadened the Attorney General's enforcement powers. *Ibid.* That amendment also provided for private causes of action, with an award of treble damages, attorneys' fees, and costs. *Ibid.* Governor Cahill believed that those provisions would provide "easier access to the courts for the consumer, [would] increase the attractiveness of consumer actions to attorneys and [would] also help reduce the burdens on the Division of Consumer Affairs." *Governor's Press Release for Assembly Bill No. 2402,* at 2 (June 29, 1971).

In this case, Cox is a private plaintiff, and the Attorney General did not intervene in the proceedings, confining her participation to that of an *amicus curiae* in this Court. Therefore, the relevant sections of the Act are *N.J.S.A.* 56:8–2 and –19. They provide:

The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale * * * or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice.

[*N.J.S.A.* 56:8–2.]

Any person who suffers any ascertainable loss of moneys or property, real or personal, as a result of the use or employment by another person of any method, act, or practice declared unlawful under this act * * * may bring an action * * *. In any action under this section the court shall, in addition to any other appropriate legal or equitable relief, award threefold the damages sustained by any person in interest. In all actions under this section the court shall also award reasonable attorneys' fees, filing fees and reasonable costs of suit.

[*N.J.S.A.* 56:8–19.]

Courts have emphasized that like most remedial legislation, the Act should be construed liberally in favor of consumers. See *Barry v. Arrow Pontiac, Inc.,* 100 *N.J.* 57, 69, 494 *A.*2d 804

(1985); *Levin v. Lewis*, 179 *N.J.Super.* 193, 200, 431 *A.*2d 157 (App.Div.1981); *State v. Hudson Furniture Co.*, 165 *N.J.Super.* 516, 520, 398 *A.*2d 900 (App.Div.1979); *Martin, supra,* 174 *N.J.Super.* at 384, 416 *A.*2d 933. Although initially designed to combat "sharp practices and dealings" that victimized consumers by luring them into purchases through fraudulent or deceptive means, *D'Ercole Sales, Inc. v. Fruehauf Corp.*, 206 *N.J.Super.* 11, 23, 501 *A.*2d 990 (App.Div.1985), the Act is no longer aimed solely at "shifty, fast-talking and deceptive merchant[s]" but reaches "nonsoliciting artisans" as well. *Ibid.* Thus, the Act is designed to protect the public even when a merchant acts in good faith. *Ibid.* Moreover, we are mindful that the Act's provision authorizing consumers to bring their own private actions is integral to fulfilling the legislative purposes, and that those purposes are advanced as well by courts' affording the Attorney General "the broadest kind of power to act in the interest of the consumer public." *Levin, supra,* 179 *N.J.Super.* at 200, 431 *A.*2d 157.

To those ends the Legislature has given the Attorney General the authority to promulgate regulations, as follows:

> To accomplish the objectives and to carry out the duties prescribed by this act, the Attorney General, in addition to other powers conferred * * * by this act, may * * * promulgate such rules and regulations * * * as may be necessary, *which shall have the force of law.*
>
> [*N.J.S.A.* 56:8–4 (emphasis added).]

The Division of Consumer Affairs has enacted extensive regulations, consistent with the foregoing authority, to deal with practices susceptible to consumer-fraud violations, such as may be found under home-improvement contracts. See, *e.g., N.J.A.C.* 13:45A–16. A major purpose of the Home Improvement Practices regulations is to provide "objective assurances" of the "terms and criteria according to which home-improvement work [should] be done." 17 *N.J.R.* 679 (Mar. 18, 1985). However, the regulations are not meant to be exhaustive, and practices not specified in the regulations may nevertheless constitute unlawful consumer fraud. *N.J.A.C.* 13:45A–16.2(a).

In this case, the trial court instructed the jury on certain unlawful practices set forth in the administrative code, namely, those making it unlawful under the Act (1) to "[m]isrepresent directly or by implication that products or materials to be used in the home improvement * * * [m]eet or exceed municipal, state, federal, or other applicable standards or requirements," *N.J.A.C.* 13:45A–16.2(a)2v; (2) to "[r]equest the buyer to sign a certificate of completion, or make final payment on the contract before the home improvement is completed in accordance with the terms of the contract," *N.J.A.C.* 13:45A–16.2(a)6v; (3) for a seller contracting for the making of home improvements to commence work "until he is sure that all applicable state or local building and construction permits have been issued as required under state laws or local ordinances," *N.J.A.C.* 13:45A–16.2(a)10i; and (4) for the seller to fail to deliver to the buyer copies of inspection certificates, when midpoint or final inspections are required under state laws or local ordinances, "when construction is completed and before final payment is due or the signing of a completion slip is requested of the buyer." *N.J.A.C.* 13:45–16.2(a)10ii.

—B—

To violate the Act, a person must commit an "unlawful practice" as defined in the legislation. Unlawful practices fall into three general categories: affirmative acts, knowing omissions, and regulation violations. The first two are found in the language of *N.J.S.A.* 56:8–2, and the third is based on regulations enacted under *N.J.S.A.* 56:8–4. A practice can be unlawful even if no person was in fact misled or deceived thereby. *D'Ercole Sales, supra,* 206 *N.J.Super.* at 22, 501 *A.*2d 990; *Skeer, supra,* 187 *N.J.Super.* at 470, 455 *A.*2d 508. The capacity to mislead is the prime ingredient of all types of consumer fraud. *Fenwick v. Kay Am. Jeep, Inc.,* 72 *N.J.* 372, 378, 371 *A.*2d 13 (1977).

When the alleged consumer-fraud violation consists of an affirmative act, intent is not an essential element and the plaintiff need not prove that the defendant intended to commit an unlawful

act. *Chattin v. Cape May Greene, Inc.,* 124 *N.J.* 520, 522, 591 *A.*2d 943 (1991) (Stein, J. concurring). However, when the alleged consumer fraud consists of an omission, the plaintiff must show that the defendant acted with knowledge, and intent *is* an essential element of the fraud. *Ibid.*

In respect of what constitutes an "unconscionable commercial practice," this Court explained in *Kugler v. Romain,* 58 *N.J.* 522, 279 *A.*2d 640 (1971), that unconscionability is "an amorphous concept obviously designed to establish a broad business ethic." *Id.* at 543, 279 *A.*2d 640. The standard of conduct that the term "unconscionable" implies is lack of "good faith, honesty in fact and observance of fair dealing." *Id.* at 544, 279 *A.*2d 640. However, "a breach of warranty, or any breach of contract, is not per se unfair or unconscionable * * * and a breach of warranty alone does not violate a consumer protection statute." *D'Ercole Sales, supra,* 206 *N.J.Super.* at 25, 501 *A.*2d 990. Because any breach of warranty or contract is unfair to the non-breaching party, the law permits that party to recoup remedial damages in an action on the contract; however, by providing that a court should treble those damages and should award attorneys' fees and costs, the Legislature must have intended that substantial aggravating circumstances be present in addition to the breach. *DiNicola v. Watchung Furniture's Country Manor,* 232 *N.J.Super.* 69, 72, 556 *A.*2d 367 (App.Div.) (finding that breach of warranty in supplying defective furniture and denying that defect existed was not unconscionable), *certif. denied,* 117 *N.J.* 126, 564 *A.*2d 854 (1989); *D'Ercole Sales, supra,* 206 *N.J.Super.* at 31, 501 *A.*2d 990 (holding that breach of warranty for malfunctioning tow truck and refusal to repair was not unconscionable practice).

The third category of unlawful acts consists of violations of specific regulations promulgated under the Act. In those instances, intent is not an element of the unlawful practice, and the regulations impose strict liability for such violations. *Fenwick, supra,* 72 *N.J.* at 376, 371 *A.*2d 13. The parties subject to the regulations are assumed to be familiar with them, so that any

violation of the regulations, regardless of intent or moral culpability, constitutes a violation of the Act. *See, e.g., Skeer, supra,* 187 *N.J.Super.* at 470, 455 *A.*2d 508 (holding that good faith will not excuse noncompliance with regulations); *Fenwick v. Kay Am. Jeep, Inc.,* 136 *N.J.Super.* 114, 123–24, 344 *A.*2d 785 (App.Div. 1975) (Kolovsky, P.J.A.D., dissenting) (same), *rev'd,* 72 *N.J.* 372, 371 *A.*2d 13 (1977); *Huffmaster v. Robinson,* 221 *N.J.Super.* 315, 321, 534 *A.*2d 435 (Law Div.1986) (same).

Significantly—and contrary to the Appellate Division majority's conclusion—to establish a violation of the Act a plaintiff need not prove an unconscionable commercial practice. Rather, the Act specifies the conduct that will amount to an unlawful practice in the disjunctive, as "any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, *or* the knowing[ ] concealment, suppression, *or* omission of any material fact * * *." *N.J.S.A.* 56:8–2 (emphasis added). Proof of any one of those acts or omissions or of a violation of a regulation will be sufficient to establish unlawful conduct under the Act. Thus, focusing only on whether an unconscionable commercial practice occurred, as the Appellate Division did, does not adequately address a consumer-fraud claim.

Applying the foregoing principles to this case, we conclude that the record exposes several bases for the jury's finding of consumer fraud. The jury determined that Sears' "failure to have competent contractors install cabinet work, plumbing and electrical wiring in a safe, professional manner and in accordance with appropriate regulations" constituted consumer fraud in violation of the Act. Sears' noncompliance with the Home Improvement Practices regulations constitutes a clear violation of the Act. The regulations are in place to prevent precisely the poor-quality work that characterized Sears' performance in this case and to protect consumers such as Cox, even though such sloppy workmanship falls short of an unconscionable commercial practice.

For instance, the jury could have concluded that although several permits were required, none was obtained for plaintiff's

renovations. Although no statute or regulation requires a home-repair contractor to obtain all permits for an owner, *N.J.A.C.* 13:45A–16.2(a)10i does provide that no contractor may begin work until he or she is sure that all applicable permits have been issued. Sears, by beginning work without checking for permits, disregarded the regulation and therefore violated the Act. Moreover, once a permit is obtained, a code inspector will inspect the residence periodically and issue a Certificate of Continued Occupancy to conform to the municipality's inspection process. Because no permit was ever issued for the Cox home, no inspections took place and no certificate was issued. In that regard, Sears violated *N.J.A.C.* 13:45A–16.2(a)10ii, which requires a contractor to give the owner a copy of an inspection certificate before final payment is due and before the contractor asks the owner to sign a completion slip. In addition, plaintiff presented evidence to support an inference that Sears had asked him to sign a certificate-of-completion form before the work had been completed, a violation of *N.J.A.C.* 13:45A–16.2(a)6v.

Plaintiff also introduced substantial evidence that the kitchen had been rewired incorrectly, creating a dangerous condition. Plaintiff relied on Sears to furnish him with a safe and usable kitchen. By failing to rewire the kitchen properly, Sears breached the contract. Its poor performance created several concealed hazardous defects that could constitute a "substantial aggravating circumstance" warranting a finding of an unconscionable commercial practice. However, because we do not detect any bad faith or lack of fair dealing on the part of Sears, we conclude that the breach of contract does not rise to the level of an "unconscionable commercial practice" in violation of the Act. *See, e.g., New Mea Constr. Corp. v. Harper,* 203 *N.J.Super.* 486, 501, 497 *A.2d* 534 (App.Div.1985) (finding that poor workmanship and substitution of inferior quality materials in addition to breach of contract constituted unconscionable commercial practice in violation of Act).

Finally, we note that the jury's findings, as revealed on the verdict sheet, were somewhat general. To ensure that the

conduct that a jury concludes amounts to consumer fraud is in fact unlawful under the Act, we recommend that trial courts frame special interrogatories to the jury. For example, in addition to asking a jury what conduct violated the Act, a verdict sheet might also ask whether the unlawful conduct involved an affirmative act, a knowing omission, or a violation of a regulation. Likewise, requiring a jury to identify the regulations that a consumer-fraud defendant has violated would further refine the verdict.

—C—

We turn now to the issue of damages as provided for under the Act. In an ordinary breach-of-contract case, the function of damages is simply to make the injured party whole, and courts do not assess penalties against the breaching party. However, the goals of the Act are different. Although one purpose of the legislation is clearly remedial in that it seeks to compensate a victim's loss, the Act also punishes the wrongdoer by awarding a victim treble damages, attorneys' fees, filing fees, and costs. In that sense, the Act serves as a deterrent. Therefore, in determining whether plaintiff has established a loss under the Act, we are guided by but not bound to strict contract principles.

A private plaintiff victimized by any unlawful practice under the Act is entitled to "threefold the damages sustained" by way of "any ascertainable loss of moneys or property, real or personal * * *." *N.J.S.A.* 56:8–19. Significantly, the standard of proof in consumer-fraud actions by private plaintiffs is higher than the standard for the Attorney General's enforcement proceedings. *Meshinsky v. Nichols Yacht Sales, Inc.*, 110 *N.J.* 464, 473, 541 *A.*2d 1063 (1988). Although the Attorney General need not prove that a victim was damaged by the unlawful practice, to warrant an award of treble damages a private plaintiff must show an "ascertainable loss."

Plaintiff has met the first requirement of *N.J.S.A.* 56:8–19 by proving that Sears committed an unlawful practice. As demonstrated above, that unlawful conduct consisted of Sears' violation

of consumer-fraud regulations relating to permits, inspections, and certificates. The next question, then, is whether plaintiff suffered any "ascertainable loss," as contemplated by the Act.

The record satisfies us that Sears' failure to comply with the Home Improvement Practices regulations visited an ascertainable loss on plaintiff. The purpose of the regulations is to protect the consumer from hazardous or shoddy work. Had all applicable permits been obtained before Sears began work, the issued permits would have triggered periodic inspections of the renovations. An inspector would have detected any substandard electrical wiring or cabinet work and would not have permitted the work to progress or have issued the required certificates until Sears corrected the deficiencies. Because the inspections did not occur, the wiring remained unsafe, the cabinets remained unattractive, and both resulted in a loss measured by the cost of repairing those conditions.

The Appellate Division majority suggests that because Cox did not spend money to repair or finish the work, he incurred no loss. However, that interpretation of *N.J.S.A.* 56:8–19 runs contrary to the Act's clearly remedial purpose. Traditionally, to demonstrate a loss, a victim must simply supply an estimate of damages, calculated within a reasonable degree of certainty. The victim is not required actually to spend the money for the repairs before becoming entitled to press a claim. *See Berg v. Reaction Motors Div.*, 37 *N.J.* 396, 404, 181 *A.*2d 487 (1962); *Tessmar v. Grosner*, 23 *N.J.* 193, 203, 128 *A.*2d 467 (1957). In this case, the testimony specifically addressed the cost of repairs, and the trial court found that Cox had adequately demonstrated those costs. The court also found persuasive that because plaintiff "kept" the kitchen since it had been installed, he did not incur any loss. Obviously, plaintiff had no other choice: he still owned the house. In addition, Cox did not "gain" a kitchen that he had not had before; prior to the renovations, he had a normal, safe kitchen. *See* 5 *Corbin on Contracts* § 1091 (Corbin ed. 1964) (stating that "[t]he injured party should not be deprived of damages measured

by the cost of curing defects, merely on the ground that he chooses to use the building in its defective character"). Therefore, we conclude that Cox's loss amounted to the cost of repairing his kitchen, $6,830, as the jury found.

Moreover, by virtue of his contract with Sears, plaintiff incurred a legal obligation in the form of a debt. That debt was presumptively collectible prior to the lawsuit, and Sears filed a counterclaim demanding payment of the full contract price. Sears also filed a lien on plaintiff's house, thereby encumbering the title. We conclude that an improper debt or lien against a consumer-fraud plaintiff may constitute a loss under the Act, because the consumer is not obligated to pay an indebtedness arising out of conduct that violates the Act.

However, in this case, the debt and the lien, although losses to Cox, and properly cancelled by the trial court for Sears' breach of contract, were not the result of Sears' violation of the Act. Rather, those losses occurred before any consumer fraud took place. The "causation" provision of *N.J.S.A.* 56:8–19 requires plaintiff to prove that the unlawful consumer fraud caused his loss. *Ramanadham v. New Jersey Mfrs. Ins. Co.,* 188 *N.J.Super.* 30, 33, 455 *A.*2d 1134 (App.Div.1982); *see, e.g., Meshinsky, supra,* 110 *N.J.* at 474–75, 541 *A.*2d 1063 (finding that defendant's forgery of plaintiff's signature on loan application, although unconscionable commercial practice, was between bank and defendant and did not cause plaintiff any loss; therefore, plaintiff was limited to damages for defendant's breach of contract). In the case before us, the contract price is not the correct measure of consumer-fraud damages because the consumer fraud occurred in the course of performance, not in the actual contracting for the home-improvement work. See *Truex v. Ocean Dodge, Inc.,* 219 *N.J.Super.* 44, 529 *A.*2d 1017 (App.Div.1987) (finding that consumer-fraud damages were amount of unconscionable commercial practice of attempted boost in price of $710, trebled to $2,130, and not full contract price). Because the improper debt and lien were not the result of Sears' consumer fraud, plaintiff is not entitled to have

those damages trebled as consumer-fraud damages. The proper measure of plaintiff's consumer-fraud damages is the cost of repair as determined by the jury, $6,830, trebled to $20,490.

Although plaintiff's breach-of-contract claim is not before us, we take into account the jury's determination that the value of Sears' performance was $238, and credit that amount against plaintiff's damage award of $20,490, leaving plaintiff with a total award of $20,262.

### III

Finally, we determine that an award of treble damages and attorneys' fees is mandatory under *N.J.S.A.* 56:8–19 if a consumer-fraud plaintiff proves both an unlawful practice under the Act and an ascertainable loss. The use of the word "shall" in the statute suggests as much. *Skeer, supra,* 187 *N.J.Super.* at 469, 455 *A.*2d 508; *Ramanadham, supra,* 188 *N.J.Super.* at 32–33, 455 *A.*2d 1134. Moreover, the legislative history indicates that the provision for attorneys' fees was intended to impose on the defendant in a private action "a greater financial penalty [than in an action brought by the Attorney General] and * * * [to ensure] that the financial cost to the private plaintiff was minimized and compensation maximized." *Skeer, supra,* 187 *N.J.Super.* at 471, 455 *A.*2d 508. Accordingly, we remand to the trial court to calculate an appropriate award for plaintiff's attorneys' fees, filing fees, and costs.

For the sake of completeness we add that a consumer-fraud plaintiff can recover reasonable attorneys' fees, filing fees, and costs if that plaintiff can prove that the defendant committed an unlawful practice, even if the victim cannot show any ascertainable loss and thus cannot recover treble damages. *Performance Leasing, supra,* 262 *N.J.Super.* at 31, 34, 619 *A.*2d 1024 (holding

that where jury found that defendant had committed unconsciona-ble commercial practice and thus had violated Act, but that plaintiff had not been damaged by that violation, strong precedent supported award to plaintiff of attorneys' fees). The fundamental remedial purpose of the Act dictates that plaintiffs should be able to pursue consumer-fraud actions without experiencing financial hardship.

### IV

We reverse the judgment of the Appellate Division and remand to the trial court for entry there of judgment for plaintiff on the sixth count of the Complaint, alleging Consumer Fraud Act viola-tions, the damages to be trebled as provided in this opinion, and for entry of judgment for plaintiff for attorneys' fees, filing fees, and costs as provided herein.

For REVERSAL AND REMANDMENT—Justices HANDLER, POLLOCK, O'HERN, GARIBALDI, and STEIN— 6, join in this opinion.