**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1051-19T1

ERMINA M. RADONCIC,

    Plaintiff-Appellant,

v.

AUTO HOLDING,

    Defendant-Respondent.

_____

Submitted December 16, 2020 – Decided January 19, 2021

Before Judges Rose and Firko.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-4016-17.

Lueddeke Law Firm, attorneys for appellant (Ronald L. Lueddeke, on the brief).

Jardim, Meisner & Susser, PC, attorneys for respondent (Michael V. Gilberti, on the brief).

PER CURIAM

Following a one-day bench trial, plaintiff Ermina Radoncic appeals from a September 27, 2019 Law Division order dismissing her complaint and entering judgment in favor of defendant Auto Holding, Inc. We affirm.

I.

For purposes of our review, we accept as true the facts set forth in plaintiff's five-count complaint and derive the following facts adduced at trial. On January 12, 2017, plaintiff, a college graduate, purchased from defendant used-car dealership a 2016 Land Rover with 6921 miles on it. She was concerned about safety after recently being involved in a car accident. According to plaintiff, defendant represented to her that the Land Rover was in "excellent condition." At trial, plaintiff testified the salespersons from the dealership advised her it was "like brand new." She signed a contract, made a down payment of $15,000, and financed the $27,215.38 balance, agreeing to make seventy-two monthly payments of $427.66. After entering the transaction, plaintiff obtained a CarFax report indicating that the Land Rover was part of a corporate fleet and not a personal lease. After noticing scratches following her purchase, defendant's employees agreed to give the vehicle a "deep cleaning."

In the months that followed, plaintiff experienced mechanical problems with the vehicle, including a faulty headlamp, water leaks, rusty wheels, and

2

doors not opening. Plaintiff took the vehicle to Land Rover of Parsippany where it was repaired under warranty terms at no cost to her.

Still having concerns about the safety of the vehicle, on May 1, 2019, plaintiff returned the Land Rover to defendant and requested a refund. The finance manager told plaintiff "we are going to make you happy." Defendant agreed to allow plaintiff to trade-in the Land Rover for a Mercedes-Benz C-Class sedan with 45,892 miles on it, which cost $33,000, and gave her a $31,000 trade-in credit for the Land Rover.[1] Plaintiff was advised by defendant's salesperson that the Mercedes was worth $43,000. She financed the amount of $32,600. The document fee charged for the Mercedes was $497.88.

Plaintiff purchased an extended service contract for the Mercedes covering thirty-six months or 30,000 miles for $2995, which she claims was an "unconscionable amount," since the cost to defendant was only $1544. Defendant did not disclose its profit or "upcharge" was $1455 on the extended service contract to plaintiff.

In her complaint, plaintiff contended that defendant committed fraud by not informing her that the Land Rover was a fleet vehicle and failing to disclose

---

[1] The complaint states that defendant later marketed the Land Rover for $35,795.

A-1051-19T1

its mechanical problems. She also alleged she was deprived of $7800 when she returned the Land Rover because it was undervalued when she purchased the Mercedes. Plaintiff also alleged defendant failed to disclose the $1455 profit it made on the extended service warranty, and she was improperly charged the $497.88 document fee. According to plaintiff, defendant's conduct constituted a violation of the New Jersey Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -20 because:

> (1) there is an affirmative representation on the buyer's order and Retail Installment Contract that the entire amount is paid to the provider, which is false;
>
> (2) there is a non-disclosure of a material fact;
>
> (3) the Automotive, Pre-Delivery Services regulations require disclosure, N.J.A.C. 13:45A-25B.2;
>
> (4) the New Jersey Used Car Lemon Law, N.J.S.A. 56:8-68(g) requires profit disclosure; and
>
> (5) the profit is unconscionable as to its amount.

Plaintiff also claimed she was told there would be "no dealer fee," but was charged a $497.88 documentation fee, and she was "overcharged" for the Mercedes by $1000. Under the New Jersey Used Car Lemon Law, plaintiff alleged defendant violated that statute by "misrepresenting" the mechanical

A-1051-19T1

condition of the Land Rover and stating it was free from "defects," in violation of N.J.S.A. 56:8-68(a) and 56:8-68(c).

On August 26, 2019, the matter was tried. Plaintiff testified on her own behalf and presented no other witnesses. Steven Chepovetsky, who is employed as the general sales manager for defendant, was the only witness who testified on behalf of the defense. Documentary evidence was received by the court. Following closing arguments, the trial court reserved decision.

On September 6, 2019, the trial court gave a comprehensive oral decision on the record. In dismissing plaintiff's complaint, the court ruled:

> According to plaintiff the Land Rover sale is fraudulent because she was not told it was a fleet vehicle and because it had a multitude of problems. There was no testimony however as to how many people actually drove the car when it was [a] fleet vehicle and there was also no proof, expert or otherwise, as to how a fleet vehicle affects the quality of a car or the value of a car.
>
> [. . .] plaintiff needed to repair the Land Rover, it was covered by warranty as indicated by the April 7, 2017 invoice from Land Rover of Parsippany. Concededly, plaintiff cites to an article reporting a case where a court in Morris County purportedly concluded that it was a consumer fraud when "plaintiff thought it was a lease[d] vehicle traded by its owner when in fact it was a loaner car."
>
> Plaintiff does not provide a copy of that case or a citation let alone any analysis of the facts and how they

compare to the case at bar. Nor does plaintiff explain the difference in value or quality between a loaner car and a leased vehicle. Therefore, the [c]ourt declines to rely on the Law Journal article citing to a case.

As noted by plaintiff, however, there is case law that recognizes that a matter is material if a responsible person would attach importance to its existence when deciding upon a course of action. Although plaintiff claims that she would not have bought the vehicle had she known it was a fleet vehicle the [c]ourt does not find her testimony to be credible for several reasons.

First, if it was so important it's not clear why she did not raise her concern with the dealer as soon as she received the CarFax report; (2) there was no indication that she ever stated her preference for a non-fleet vehicle; (3) she could have refused to proceed with the transaction until a CarFax was received; (4) she waited [four]-and-a-half months to complain about the car. If all of the problems were so important and disconcerting why didn't she bring them to the dealer's attention sooner.

Finally, there is no proof that a fleet vehicle is less valuable than a leased vehicle and [in] light of the foregoing the [c]ourt does not find that there was any violation of the CFA related to the Land Rover purchase.

As for fraud related to the purchase of the Benz or the return of the Land Rover, that exchange took place on April 17, 2017, and as stated above plaintiff characterized the Mercedes as a replacement or exchange whereas defendant referred to it as a trade-in. In other words, plaintiff's first claim essentially is that she was duped into a trade-in when she believed she was exchanging the vehicle.

6

First, plaintiff addresses the difference in mileage, noting that the Land Rover used only [2800] miles since she had it resulting in an odometer reflecting in a total of approximately [6900]. In contrast the Mercedes she eventually purchased had 45,397 miles on the odometer and was a sedan when she had stated she wanted an SUV for safety. In light of the difference she believes the Mercedes was worth less.

Likewise, when plaintiff purchased the Land Rover in January 2017, she paid $38,800. When she gave it back to the dealership in May 2017 and purchased the Mercedes Benz however she only received $31,000, resulting in a difference of [$7800]. Meanwhile monthly payments of $427.65 increased to $489.20 under the Mercedes Benz.

According to plaintiff, the $31,000 trade-in allowance for the Land Rover was not reviewed with her. She contends that had she known she was receiving [$7800] less than she paid in that short of a time span she would not have bought the Mercedes. Plaintiff also asserts that she should have been paid more for the Land Rover because it was advertised for approximately $35,000 a few weeks later as indicated by one of the exhibits. There is no evidence regarding what price it ultimately sold at.

The trial court found plaintiff was not credible in her testimony claiming she did not know the Land Rover was a "trade-in" rather than an "exchange" and concluded there was no CFA violation regarding the trade-in. As to plaintiff's theory that defendant was not permitted to make a profit on the extended service warranty, the trial court rejected the claim and found no CFA violation. The

7

court noted plaintiff failed "to tie in . . . how a failure to disclose a profit regarding a warranty constitute[d] a misrepresentation of a warranty." In conclusion, the trial court found plaintiff failed to establish her burden that any fraudulent act or omission was attributable to defendant, and she failed to prove ascertainable loss. A memorializing order was entered on September 27, 2019. This appeal ensued.

## II.

On appeal, plaintiff raises a single point arguing the trial court erred in ruling defendant's conduct in connection with the sale of the extended service contract did not violate the CFA. We conclude the argument is without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E). The trial court had reviewed and considered the evidence plaintiff proffered at trial. Accordingly, the trial court did not overlook or fail to appreciate the significance of the evidence. D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990). However, we add the following remarks.

Factual determinations "made by the trial court sitting in a non-jury case are subject to a limited and well-established scope of review." Seidman v. Clifton Sav. Bank, S.L.A., 205 N.J. 150, 169 (2011) (citing In re Trust Created by Agreement Dated Dec. 20, 1961, ex. rel. Johnson, 194 N.J. 276, 284 (2008)).

We will not "disturb the factual findings and legal conclusions of the trial judge unless we are convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Ibid. (quoting In re Trust, 194 N.J. at 284).

> The general rule is that findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence. Deference is especially appropriate when the evidence is largely testimonial and involves questions of credibility. Because a trial court hears the case, sees and observes the witnesses, and hears them testify, it has a better perspective than a reviewing court in evaluating the veracity of witnesses.
>
> [Seidman, 205 N.J. at 169 (quoting Cesare v. Cesare, 154 N.J. 394, 411-12 (1998)).]

The trial court's decision on issues of law are, however, subject to plenary review. Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995). "A trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Ibid. (citations omitted).

To establish a prima facie case of common law fraud, a plaintiff must show that the defendant: (1) made a material representation of a presently existing or past fact; (2) made the representation with knowledge of its falsity; (3) made the representation with the intention that the other party would rely

A-1051-19T1

thereon; and (4) that the other party relied upon the representation to his or her detriment. Jewish Ctr. of Sussex Cty. v. Whale, 86 N.J. 619, 624-25 (1981).

In contrast to common law fraud, unlawful practices under the CFA fall into three general categories: "affirmative acts, knowing omissions, and regulation violations." Cox v. Sears Roebuck & Co., 138 N.J. 2, 17 (1994). "When the alleged consumer-fraud violation consists of an affirmative act, intent is not an essential element and the plaintiff need not prove that the defendant intended to commit an unlawful act." Id. at 17-18. Indeed, where there is an affirmative act, the plaintiff "need not even show reliance on the violation of the [CFA]." Leon v. Rite Aid Corp., 340 N.J. Super. 462, 468 (App. Div. 2001). Nor must the plaintiff prove that the misrepresentation was of a material fact. Id. at 469. "However, when the alleged consumer fraud consists of an omission, the plaintiff must show that the defendant acted with knowledge, and intent is an essential element of the fraud." Cox, 138 N.J. at 18.

To prove a prima facie CFA claim, a plaintiff must present evidence establishing: "(1) unlawful conduct by the defendant[]; (2) an ascertainable loss on the part of the plaintiff; and (3) a causal relationship between the defendant['s] unlawful conduct and the plaintiff's ascertainable loss." N.J.

Citizen Action v. Schering-Plough Corp., 367 N.J. Super. 8, 12-13 (App. Div. 2003).

To satisfy the ascertainable loss prong of the prima facie standard, the plaintiff "must suffer a definite, certain and measurable loss, rather than one that is merely theoretical." Bosland v. Warnock Dodge, Inc., 197 N.J. 543, 558 (2009). "The certainty implicit in the concept of an 'ascertainable' loss is that it is quantifiable or measurable." Thiedemann v. Mercedes-Benz, U.S., LLC, 183 N.J. 234, 248 (2005). "In cases involving breach of contract or misrepresentation, either out-of-pocket loss or a demonstration of loss in value will suffice to meet the ascertainable loss hurdle . . . ." Ibid.

Here, plaintiff only made "conclusory assertions" that it was improper for defendant to earn a $1455 profit from the sale of its extended service contract. Moreover, plaintiff relied upon non-precedential and unpublished decisions to support her cause of action.[2] Because plaintiff cannot prove defendant made any misrepresentations of fact to her with regard to the extended service contract, the trial court correctly determined that plaintiff failed to establish a

---

[2] "No unpublished opinion shall constitute precedent or be binding upon any court." R. 1:36-3. Unreported decisions "serve no precedential value, and cannot reliably be considered part of our common law." Trinity Cemetery v. Wall Twp., 170 N.J. 39, 48 (2001) (Verniero, J. concurring).

A-1051-19T1

prima facie case of common law fraud or consumer fraud against defendant. <u>See</u> <u>Cox</u>, 138 N.J. at 18; <u>Jewish Ctr. of Sussex Cty.</u>, 86 N.J. at 624-25; <u>Cole v. Laughrey Funeral Home</u>, 376 N.J. Super. 135, 144 (App. Div. 2005).

Moreover, plaintiff failed to establish an ascertainable loss and a causal relationship between the purported unlawful conduct and the ascertainable loss. <u>Bosland</u>, 197 N.J. at 557. We agree with the trial court that plaintiff "does not identify what statement is false," and she failed to prove an unconscionable practice as defined by the CFA. The trial court's decision was based upon substantial credible evidence in the record, and plaintiff's complaint was properly dismissed.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1051-19T1