**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1805-15T4

PAUL PROFETA,

       Plaintiff-Appellant,

v.

TOWN SPORTS INTERNATIONAL
LIVINGSTON and SAUL
CONCEPCION,

       Defendants-Respondents.

_____

       Argued June 6, 2017 — Decided November 17, 2017

       Before Judges Messano and Grall.

       On appeal from the Superior Court of New
       Jersey, Law Division, Essex County, Docket
       No. DC-6077-15.

       Paul Profeta, appellant, argued the cause
       pro se (Marc J. Gross and Gary L.
       Koenigsberg, on the briefs).

       Robert C. Neff, Jr., argued the cause for
       respondents (Wilson, Elser, Moskowitz,
       Edelman & Dicker, LLP, attorneys; Mr. Neff,
       of counsel and on the brief).

PER CURIAM

Plaintiff Paul Profeta is a member of a health club, defendant Town Sports International Livingston, doing business as New York Sports Club (NYSC). Defendant Saul Concepcion is the general manager of that facility. Profeta filed a complaint in the Special Civil Part charging defendants with violations of the Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -20, unjust enrichment and breach of contract and the covenant of good faith and fair dealing. Profeta appeals a judgment awarding him $60.18 for breach of contract and dismissing his other claims. He also appeals an order denying reconsideration.

Because Profeta presented no argument on denial of reconsideration in his opening brief, we will not address the argument presented in his reply brief. See In re Bell Atlantic-New Jersey, Inc., 342 N.J. Super. 439, 442-43 (App. Div. 2001). We affirm the dismissal of his CFA claim because that determination "is based on findings of fact that are adequately supported by the record," Rule 2:11-3(e)(1)(A), and Profeta has not shown legal error warranting reversal. R. 2:10-2.

The pertinent facts are largely undisputed. Profeta was a "member" of NYSC and was paying $95.23 monthly for a "passport" membership plan. NYSC billed the monthly payments to his credit card.

In mid-November 2014, Profeta approached Concepcion to ask about a $19.95 "month-to-month" rate with "no commitment" that NYSC advertised outside the facility. Profeta was interested until Concepcion told him there was a $150 enrollment fee.

Concepcion offered and Profeta accepted a different plan, a "premier" membership with a monthly rate of $32.05, $63.18 less than he was paying. Under the terms of his "passport" membership agreement, he had to pay the "passport" rate until the next billing cycle commenced on December 1.

Concepcion did not change Profeta's membership in the company's computer system until early February 2015. Consequently, Profeta was not charged at the reduced rate until March 1. Concepcion testified that NYSC was not allowing general managers to change membership plans in November, and when he tried to change Profeta's plan in December a computer glitch required another swipe of Profeta's credit card. Because Profeta did not bring him the card until February, he could not make the change earlier.

Invoices NYSC admitted at trial show that NYSC charged Profeta's credit card at the lower $32.05 monthly rate as of March 1 but billed him at his prior monthly rate for three billing cycles — December, January and February. Profeta sought a refund of the difference.

A-1805-15T4

Concepcion's first attempt to secure a refund for Profeta was an April 13 email to NYSC explaining: "[M]ember attempted to rewrite in November but the process was never completed due to a 500 TimeOut Error.  Please credit difference from [sic] Passport and Premier" for December and January.

On April 17, 2015, Profeta emailed Concepcion and warned he would file a lawsuit if he did not receive a refund by April 24. Four days before that deadline, his attorney sent the complaint to the Clerk of the Special Civil Part.  On April 22, the Clerk filed the complaint and NYSC prepared an invoice reporting a $120.35 credit to Profeta's card.  The next day, Concepcion emailed Profeta and advised the refund had been processed. Profeta responded: "Unfortunately it is too little too late.  I have no proof [that] what you say is true and given your past history, no reason to rely on it."

In his complaint, Profeta alleged overcharges in January and February; he omitted December.  At trial, Concepcion admitted NYSC gave Profeta refunds for December and January but not February.  Because Profeta and Concepcion agreed there were three overcharges, the trial court amended the contract claim to conform to the evidence.  The court did not amend the CFA claim, because the court concluded Profeta failed to prove a violation.

4                                    A-1805-15T4

The court determined Profeta could not prove a CFA claim based on deceptive advertising, because he rejected the advertised $19.95 membership when he was told about the enrollment fee. As to the overcharges and delayed refunds, the court found that Concepcion attempted to process Profeta's reduced charge in November and to obtain a refund of the overcharge on April 13. Considering those facts and the parties' mutual confusion about the number of overcharges, the court would not "ascribe, as the fact finder, a fraudulent intent on the part of the defendant," and concluded that Profeta established nothing more than NYSC's incompetence and his own understandable frustration. Thus, the court was "not persuaded" Profeta met his burden of proof.

Appellate courts "review the trial court's determinations, premised on the testimony of witnesses and written evidence at a bench trial, in accordance with a deferential standard." D'Agostino v. Maldonado, 216 N.J. 168, 182 (2013). Although review of legal determinations is de novo, id. at 182-83, appellate courts do "'not disturb the factual findings and legal conclusions of the trial judge unless . . . convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice.'" Rova Farms Resort, Inc. v.

Investors Ins. Co., 65 N.J. 474, 484 (1974) (quoting Fagliarone v. Twp. of No. Bergen, 78 N.J. Super. 154, 155 (App. Div. 1963)); see R. 2:10-2.  Appellate courts generally do not review issues that have not been raised in the trial court and on appeal.  See, e.g., Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973).

Profeta argues the trial court "should have found consumer fraud." (capitalization omitted).  In support of that claim he contends, "[d]efendants clearly engaged in consumer fraud."  He asserts that defendants: acknowledged he was still owed $60.18; took "several months just to make a partial refund"; engaged in "'bait and switch' false advertising that did not indicate change fees or that a change could only be made at the first of the month"; and, by paying in response to his threat to sue, demonstrated "they can pay if they want to."  In addition, he argues "the trial court improperly ascribed a duty to [him] to hold to his self-imposed deadline of April 24" before filing suit.[1]

To establish a cause of action under the CFA Profeta was required to prove three elements: "1) unlawful conduct . . . 2)

_____

[1] The brief submitted on Profeta's behalf includes additional assertions based on post-trial conduct, which are irrelevant to the claims pled in the complaint and tried to the court.

an ascertainable loss . . . ; and 3) a causal relationship between the unlawful conduct and the ascertainable loss." Bosland v. Warnock Dodge, Inc., 197 N.J. 543, 557 (2009).

The unlawful conduct essential is "an 'unlawful practice' as defined in the legislation." Cox v. Sears Roebuck & Co., 138 N.J. 2, 17 (1994). "Unlawful practices fall into three general categories: affirmative acts, knowing omissions, and regulation violations. The first two are found in the language of N.J.S.A. 56:8-2, and the third is based on regulations enacted under N.J.S.A. 56:8-4." Ibid.

The Legislature has supplemented the CFA over the years to address specific types of consumer transactions and authorize implementing regulations, and health clubs are among the businesses so addressed, N.J.S.A. 56:8-39 to -48; N.J.A.C. 13:45A-25.1 to -25.7. Profeta relies solely on the "unlawful practices" identified in N.J.S.A. 56:8-2:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid . . . .

"The capacity to mislead is the prime ingredient of deception or an unconscionable commercial practice." Fenwick v. Kay Am. Jeep, Inc., 72 N.J. 372, 378 (1977)). As used in the CFA, "the term "unconscionable" implies [a] lack of 'good faith, honesty in fact and observance of fair dealing.'" Cox, supra, 138 N.J. at 18 (quoting Kugler v. Romain, 58 N.J. 522, 544 (1971)).

The trial court properly found Profeta failed to prove a claim based on deceptive advertising. Profeta rejected the $19.95 fee that NYSC advertised without any reference to its $150 enrollment fee, and he sought damages for NYSC's failure to bill him at the rate for the different membership plan he chose instead. The retained overcharge was the only loss Profeta established and that loss had no causal connection with the deceptive advertisement. This is not a case where a consumer was lured into joining a health club by an advertisement; Profeta was a member. In short, Profeta failed to prove essential elements of this claim — an ascertainable loss causally related to deceptive advertising. Bosland, supra, 197 N.J. at 561; see also Weinberg v. Sprint Corp., 173 N.J. 233, 251 (2002) (noting that "a claim of ascertainable loss [is] a prerequisite for a private cause of action" under the CFA).

A-1805-15T4

The trial court also found Profeta failed to prove a CFA violation based on NYSC's billing his credit card at the wrong rate for three months and delaying his refund. As to this claim, the court concluded the conduct proven was more consistent with "incompetence" than with an "unlawful practice" as defined in N.J.S.A. 56:8-2.

Concepcion's testimony, which the court referenced and obviously credited, provided ample evidential support for the court's rejection of this claim. It undercut a finding of an act or omission that had the "capacity to mislead," Fenwick, supra, 72 N.J. at 378, or conduct demonstrating a lack of good faith, honesty and fair dealing, Cox, supra, 138 N.J. at 18, which are the prime ingredients of a CFA claim. Concepcion described his: inability to change memberships in November; unsuccessful attempt to change Profeta's membership in December due to a computer problem; request to re-swipe Profeta's credit card so he could make the change; and his correction of Profeta's membership when Profeta gave him the credit card. Because of the ample evidential support, we defer to the trial court's determination.

Profeta also contends the trial court erred in assigning significance to his filing of the complaint before the deadline he gave NYSC. In Bosland v. Warnock Dodge, Inc., 197 N.J. 543,

561 (2009), the Court held that the CFA does not require a pre-suit demand before filing a complaint for refund of an overcharge.  But in Bosland, the unlawful practice at issue was not the delayed refund, the plaintiff had established an unlawful practice based on an overcharge that violated a regulation implementing the CFA.  Id. at 557.  The question was whether the plaintiff's failure to demand a refund barred his recovery in a private action under the CFA.  Id. at 552-53.  In this case, Profeta did not establish an essential unlawful practice.[2]  Accordingly, the trial court's consideration of Profeta's disregard of the deadline was immaterial to the denial of his CFA claim.  As such, any error was clearly incapable of producing an unjust result.  R. 2:10-2.

Profeta also argues that "the overall conduct of the trial court deprived the litigants of a fair trial."  Review of the record has convinced us the point has insufficient merit to warrant more than brief comment.  R. 2:11-3(e)(1)(E).  Viewed in context, the court's direct and stern comments were intended to maintain decorum in the courtroom, secure a proper presentation

---

[2] On appeal Profeta relies on an unpublished decision of this court, which was not brought to the trial court's attention until appended as an exhibit to counsel's certification accompanying the motion for reconsideration.  The trial court was not bound to follow that decision.  See R. 1:36-3.

of testimony and promote an efficient presentation of documentary evidence.  The harsh delivery does not reflect bias or partiality.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1805-15T4