**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4641-19

JASON CHEN,

     Plaintiff-Respondent,

v.

NORTHEAST MOTOR CARS,
INC., d/b/a AUTOBAHN
DRIVEN BY DELTA and
d/b/a AUTOBAHN DRIVEN
BY NORTHEAST MOTOR
CARS, SHLOMI ZINER,
individually, d/b/a
NORTHEAST MOTOR CARS,
INC., d/b/a AUTOBAHN
DRIVEN BY DELTA, d/b/a
AUTOBAHN DRIVEN BY
NORTHEAST MOTOR CARS,
and d/b/a VENTURE AUTO
SALES, ELAINE ZINER, a/k/a
"MELISSA" ZINER, individually,
d/b/a NORTHEAST MOTOR
CARS, INC., d/b/a AUTOBAHN
DRIVEN BY DELTA, d/b/a
AUTOBAHN DRIVEN BY
NORTHEAST MOTOR
CARS, and d/b/a VENTURE
AUTO SALES,

Defendants,
and

VENTURE MOTOR CARS, LLC,
PAUL GUTIERREZ, and AMIR
KOPMAN,

     Defendants-Appellants.
_____

Argued September 27, 2021 – Decided October 5, 2021

Before Judges Sumners and Firko.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-7271-18.

Ian J. Hirsch argued the cause for appellants.

Andrew R. Wolf argued the cause for respondent (The Wolf Law Firm, LLC, attorneys; Bharati O. Sharma, on the brief).

PER CURIAM

Defendants Venture Motor Cars LLC (Venture), Paul Gutierrez, and Amir Kopman (collectively the Venture defendants) appeal from a December 26, 2019 Law Division order granting plaintiff Jason Chen's motion for partial summary judgment and denying their cross-motions for summary judgment.[1] Venture also appeals the August 5, 2020 order awarding attorney's fees to plaintiff pursuant

---

[1] Co-defendants have not filed an appeal.

to the New Jersey Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -20, in the amount of $107,069.75, which included a contingency fee enhancement of twenty-five percent. We affirm both orders.

I.

The facts are derived from evidence submitted by the parties in support of, and in opposition to, the summary judgment motions, viewed in a light most favorable to Venture. H.C. Equities, LP v. Cty. of Union, 247 N.J. 366, 254 (2021). On July 18, 2018, plaintiff posted his 2013 Nissan 370Z Touring on the website Cars.com,[2] an online platform that links car shoppers with sellers in order to facilitate the sale and purchase of vehicles. As reflected by an email of even date from Cars.com, at approximately 11:44 a.m., plaintiff received an offer from "Autobahn Driven by Northeast Motor Cars" (Northeast) to purchase his Nissan through Cars.com for $22,036. Plaintiff accepted the Cars.com offer and received a confirmatory email from Cars.com at 11:48 a.m., which stated: "Congratulations! You have accepted an offer from Autobahn [D]riven by Northeast for your 2013 Nissan 370Z Touring."

---

[2] The "About" page on cars.com describes the website as "[CARS] create[s] 'car chemistry' by connecting buyers and sellers, matching people with their perfect car, and inspiring a better shopping, selling and buying experience. Cars.com, https://www.cars.com/about (last visited September 28, 2021).

Plaintiff then called Northeast to verbally accept the Cars.com offer and was connected with defendant Amir Kopman, an employee. Kopman claimed he had no knowledge of the accepted Cars.com offer but stated he would be happy to come take a look at the Nissan. Following this conversation, plaintiff searched other online automobile sales platforms in order to obtain additional price quotes and contacted Cars.com in an effort to relist his Nissan but was unable to do so. Consequently, plaintiff listed the Nissan on another online platform and received an offer of $18,100 to $18,200.

The next day, July 19, 2018, Kopman and another individual met plaintiff at his residence in New York to inspect the Nissan. After some negotiations, Kopman offered plaintiff $18,500 for the Nissan and stated that he would not honor the $22,036 Cars.com offer, the purported retail value of the vehicle. Kopman offered to purchase the Nissan for $18,500 and represented the dealership would pay off the loan balance. After payoff was made by the dealership to the lienholder, title would be sent to plaintiff, and Kopman advised that he would provide a check for the balance owed on the Nissan to plaintiff in exchange for the title. Plaintiff agreed to these terms and signed the wholesale purchase form provided by Kopman. Plaintiff then gave Kopman the keys to the Nissan, who left with the vehicle.

4

Despite Kopman's repeated assurances that plaintiff's balance would be paid off, as of August 5, 2018, the loan balance had still not been paid off prompting plaintiff to make a $249.89 payment to the lienholder in order to protect his credit rating. On August 6, 2018, Kopman texted plaintiff a picture of a signed power-of-attorney (POA) dated July 30, 2018, ostensibly granting defendant Northeast the authority to pay off the loan balance and obtain title to the Nissan. Kopman also texted plaintiff a picture of a check dated July 30, 2018 from Venture in the amount of $5,224.25, payable to the lienholder, which was posted to plaintiff's account on August 7, 2018. Plaintiff denied ever receiving or signing the POA and claimed his signature was forged.

Approximately two weeks later, plaintiff called the lienholder to inquire about the status of the title and was informed it was sent to Northeast. Plaintiff immediately called Kopman, who confirmed receipt of the title, and advised plaintiff that the dealership would send a check to him for the balance via Federal Express overnight delivery. When the check did not arrive the next day, plaintiff called Kopman and requested the tracking number, which he refused to provide. Instead, Kopman proposed a bank transfer of the funds and plaintiff acquiesced. But despite Kopman's repeated promises to plaintiff, plaintiff never received the payment.

5

On August 20, 2018, Northeast sold the Nissan to another individual evidenced by the transfer of the Nissan's title. This sale was made despite the fact that Northeast's status as a "Domestic For-Profit Corporation" had been revoked on June 16, 2018, by this State for "[f]ailure to [p]ay [a]nnual [r]eports."[3]

Plaintiff then exchanged a series of texts with Kopman between September 5, 2018, and September 17, 2018, wherein Kopman promised payment, including by personal delivery, since plaintiff had not yet received the balance due to him. On September 17, 2018, Kopman texted a picture of a check to plaintiff, indicating the check had been returned to the dealership because no one was at his residence to accept delivery. Plaintiff disputed this claim, asserting that he works remotely from his residence and had been waiting for the check to arrive. Kopman informed plaintiff that the dealership had stopped payment on the check and would issue a replacement.

Plaintiff arranged to pick up the replacement check directly from Northeast on September 21, 2018 at approximately 2:00 p.m. That day, Kopman called plaintiff and told him not to come to the dealership because its owner and

_____

[3] The record shows that as of July 29, 2019, Northeast's status as a for-profit corporation had not been reinstated.

A-4641-19

president, defendant Elaine Ziner, also known as Melissa Ziner, had not yet prepared the check. Kopman then told plaintiff that he would personally drive to his home over the weekend to deliver the check. Kopman did not deliver the check as promised, and advised plaintiff on September 24, 2018, that Ziner would issue the check and give it to the dealership's manager, Gutierrez, for delivery the next morning at the dealership.

On September 25, 2018, plaintiff drove from his residence to the dealership located in South Hackensack to pick up the check. He timely arrived at 11:00 a.m. as planned and spoke with an employee who informed him neither Kopman nor Gutierrez were there. Plaintiff then called Kopman who claimed he was delayed due to bad weather conditions, and he informed plaintiff that Gutierrez was in possession of the check but was in a meeting more than two hours away. In response, plaintiff stated he would wait for Gutierrez, but Kopman promised he would have someone deliver the check to plaintiff's home the following morning. Plaintiff left the dealership without the check based upon Kopman's representation.

The check was again not delivered, and Kopman made another promise to plaintiff, this time claiming that if no one delivered the check by Friday, September 28, 2018, he would give plaintiff $13,000 in cash on Monday,

7

October 1, 2018. On September 28, 2018, Kopman called plaintiff and told him he would personally deliver a check to him on Saturday, September 29, 2018. The check was not delivered, prompting plaintiff to text Kopman on September 29, 2018, that he would be retaining an attorney.

On October 1, 2018, plaintiff and Kopman spoke by phone. Kopman expressed his surprise that Gutierrez had not delivered the check and advised plaintiff the dealership received an $11,000,000 line of credit, which would enable plaintiff to be made "whole" by October 3, 2018. However, plaintiff never received the outstanding $13,275.75 balance.

In his complaint,[4] plaintiff contended that defendants engaged in unconscionable commercial practices by using a "bait and switch" tactic to induce him into selling his Nissan to the dealership, forging his name on the POA, converting the vehicle by selling it to another individual for more money than what plaintiff was owed, and retaining the proceeds. According to plaintiff, the Venture defendants' conduct constituted a violation of the CFA because:

> (1) there was an affirmative representation that the check had been sent or would be delivered when the Venture defendants knew these statements were untrue;
>
> (2) there was a material misrepresentation when plaintiff was offered $22,036 for his Nissan and the

---

[4] The complaint is not included in the appendices.

8

Venture defendants refused to honor their offer after plaintiff accepted it;

(3) there was a material misrepresentation when plaintiff was told the Venture defendants would pay off the remaining loan on the Nissan but failed to do so timely, forcing plaintiff to make a payment on the loan balance with interest;

(4) there was a material misrepresentation when plaintiff was advised the balance owed to him would be paid in exchange for the title and, instead, the Venture defendants obtained title directly from the lienholder without paying plaintiff; and

(5) these events were unlawful affirmative acts under the CFA.

Plaintiff also averred that Gutierrez was individually liable under the CFA for creating policies and practices for Venture resulting in an ascertainable loss. In addition, plaintiff sought punitive damages under the New Jersey Punitive Damages Act, N.J.S.A. 2A:15-5.9 to -5.17 and the New Jersey Racketeer Influenced and Corrupt Organization Act (RICO), N.J.S.A. 2C:41-1 to -6.2 by engaging in conduct constituting racketeering activity and fraudulent practices by virtue of the alleged forgery on the POA and the Transfer of Ownership. Plaintiff later filed a first amended complaint.[5]

---

[5] The first amended complaint is not included in the appendices.

A-4641-19

Following a period of discovery, on November 8, 2019, plaintiff moved for partial summary judgment as to count one of his amended complaint alleging violations of the CFA. The Venture defendants opposed plaintiff's motion and cross-moved for summary judgment. On December 19, 2019, Judge Rachelle L. Harz heard oral arguments on the motions and reserved decision. On December 26, 2019, the judge granted plaintiff's motion for partial summary judgment and denied the Venture defendants' cross-motions for summary judgment.

In her comprehensive written decision, Judge Harz found the Venture defendants and co-defendants jointly and severally liable because they engaged in unconscionable commercial practices, deception, fraud, false pretense, false promise, and misrepresentation under the CFA, which resulted in plaintiff sustaining an ascertainable loss of $17,082.09. The judge determined plaintiff's allegations set forth in his statement of undisputed facts "have in essence been admitted by all defendants," and the Venture defendants conceded that the forgery involved here is "common practice and 'pro forma in a perfunctory function beneficial to the grantor.'" As a matter of law, the judge concluded defendants' failure to pay plaintiff for his Nissan was "the direct cause of his ascertainable loss," and awarded treble damages under the CFA pursuant to

10

N.J.S.A. 56:8-19, ($17,082.09 x 3), for a total award of $51,246.27. In addition, the judge found plaintiff was entitled to reasonable attorney's fees and costs under N.J.S.A. 56:8-19. Two memorializing orders were entered.

On February 24, 2020, plaintiff filed his application for attorney's fees and costs, which was opposed. On June 3, 2020, Judge Harz heard oral argument on the application, reserved decision, and issued another comprehensive written decision on July 23, 2020. The judge awarded attorney's fees and costs in the amount of $107,069.75, based on a lodestar amount of $83,697.50, a twenty-five percent fee enhancement of $20,924.37, and costs of $2,447.88. A memorializing order was entered on August 5, 2020. This appeal ensued.

On appeal, the Venture defendants argue the judge abused her discretion:

> (1) by changing the purchase price of the Nissan, increasing it from $18,500 to $22,036 during a summary judgment hearing instead of submitting this alleged disputed fact to a trial;
>
> (2) in finding that the decrease in the sales price of the Nissan from $22,036 to $18,500 is subject to the CFA;
>
> (3) by finding the CFA applies to plaintiff, who is a seller, when the Venture defendants are the buyers and consumers; and
>
> (4) in awarding 100% of counsel fees to plaintiff's attorneys.

11

We disagree and affirm substantially for the reasons set forth in Judge Harz's decisions. We add the following remarks.

## II.

Appellate courts review an order granting summary judgment under the same standard that trial courts apply when ruling on a motion for summary judgment. RSI Bank v. Providence Mut. Fire Ins. Co., 234 N.J. 459, 472 (2018) (citing Bhagat v. Bhagat, 217 N.J. 22, 38 (2014)); ADP, LLC v. Kusins, 460 N.J. Super. 368, 399 (App. Div. 2019). Courts ruling on summary judgment are required to view the evidence presented in the light most favorable to the non-moving party to determine whether the materials presented "are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995). If "there is no genuine issue as to any material fact challenged and . . . the moving party is entitled to judgment . . . as a matter of law," then summary judgment is appropriate. R. 4:46-2(c). In other words, summary judgment is properly granted "when the evidence 'is so one-sided that one party must prevail as a matter of law.'" Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 406 (2014) (quoting Brill, 142 N.J. at 540).

A-4641-19

The non-moving party bears the affirmative burden "to make a complete and comprehensive showing why summary judgment should not be entered." Lombardi v. Masso, 207 N.J. 517, 556 (2011) (Rivera-Soto, J., dissenting). To satisfy this burden, "the [non-moving] party must 'demonstrate by competent evidential material that a genuine issue of fact exists.'" Globe Motor Co. v. Igdalev, 225 N.J. 469, 479-80 (2016) (quoting Robbins v. Jersey City, 23 N.J. 229, 240-41 (1957)). The court must then determine "whether a rational factfinder could resolve the alleged disputed issue in favor of the non-moving party," id. at 481 (quoting Perez v. Professionally Green, LLC, 215 N.J. 388, 405-06 (2013)), bearing in mind "neither the motion court nor an appellate court can ignore the elements of the cause of action or the evidential standard governing the cause of action." Bhagat, 217 N.J. at 38.

The CFA affords "relief to consumers from 'fraudulent practices in the marketplace.'" Lee v. Carter-Reed Co., 203 N.J. 496, 521 (2010) (quoting Furst v. Einstein Moomjy, Inc., 182 N.J. 1, 11 (2004)). The CFA provides relief to "[a]ny person who suffers any ascertainable loss of moneys or property, real or personal, as a result of the use or employment by another person of any method, act, or practice declared unlawful under this act." N.J.S.A. 56:8-19. The CFA requires a plaintiff to prove three elements: (1) unlawful conduct by defendant;

13

(2) an ascertainable loss by plaintiff; and (3) a causal relationship between the unlawful conduct and the ascertainable loss." D'Agostino v. Maldonado, 216 N.J. 168, 184 (2013) (quoting Bosland v. Warnock Dodge Inc., 197 N.J. 543, 557 (2009)). Prevailing plaintiffs are entitled to treble damages for losses resulting from the violations, as well as the "award [of] reasonable attorneys' fees, filing fees and reasonable costs of suit." N.J.S.A. 56:8-19.

"An 'unlawful practice' contravening the CFA may arise from (1) an affirmative act; (2) a knowing omission; or (3) a violation of an administrative regulation." Dugan v. TGI Fridays, Inc., 231 N.J. 24, 51 (2017) (citing Thiedemann v. Mercedes Benz USA, LLC, 183 N.J. 234, 245 (2005)); Cox v. Sears Roebuck & Co., 138 N.J. 2, 17 (1994). "The language of the CFA specifically identifies a variety of affirmative acts, including 'deception, fraud, false pretense, false promise, [and] misrepresentation,' and it also identifies as actionable 'the knowing[ ] concealment, suppression or omission of any material fact,' if intentional, N.J.S.A. 56:8-2." Allen v. V & A Bros., Inc., 208 N.J. 114, 131 (2011) (alterations in original).

"[A]n affirmative misrepresentation is 'one which is material to the transaction and which is a statement of fact, found to be false, made to induce the buyer to make the purchase.'" Mango v. Pierce-Coombs, 370 N.J. Super.

239, 251 (App. Div. 2004) (quoting Ji v. Palmer, 333 N.J. Super. 451, 462 (App. Div. 2000)). A statement is material if:

> (a) a reasonable person would attach importance to its existence in determining a choice of action . . . ; or
>
> (b) the maker of the representation knows or has reason to know that its recipient regards or is likely to regard the matter as important in determining his choice of action, although a reasonable [person] would not so regard it.
>
> [Ji, 333 N.J. Super. at 462 (first alteration in original) (quoting Restatement (Second) of Torts § 538(2) (Am. Law Inst. 1977)).]

"A showing of intent is not essential if the claimed CFA violation is an affirmative act or a regulatory violation, but such a showing is necessary if the claimed violation is an omission pursuant to N.J.S.A. 56:8-2." Dugan, 231 N.J. at 51 (citations omitted).

Viewing the evidence in the light most favorable to the Venture defendants, the judge found plaintiff demonstrated multiple unconscionable commercial practices, including not paying plaintiff for the Nissan after acquiring title; forging his signature on the POA; converting the vehicle and selling it to another consumer for more than $18,500 and keeping the proceeds; not paying off the balance of the car loan; and refusing to honor the initial

15

$22,036 offer after plaintiff accepted it. The record amply supports the judge's findings.

Moreover, the judge aptly concluded that Gutierrez, Kopman, and the other individually named defendants were individually liable under the CFA. The evidence shows the Venture defendants engaged in reprehensible conduct in violation of the CFA. "[T]here can be no doubt that the CFA broadly contemplates imposition of individual liability." Allen, 208 N.J. at 130. "In light of the broad remedial purposes of the CFA and the expansive sweep of the definition of 'person,' it is clear that an individual who commits an affirmative act or a knowing omission that the CFA has made actionable can be liable individually." Id. at 131. While an individual is "not liable merely because of the act of the corporate entity," an individual "may be independently liable for violations of the CFA, notwithstanding the fact that they were acting through a corporation at the time." Id. at 131-132 (citations omitted).

Against this backdrop, the Venture defendants assert the judge erred by changing the price of the Nissan from $18,500 to $22,036, a difference of $3536, without the benefit of a trial. They also claim the contract for sale was modified on July 19, 2018, when Kopman offered $18,500 to plaintiff, which he accepted. The Venture defendants also contend the transaction did not violate the CFA

16

because plaintiff agreed to sell the Nissan to the Venture defendants for $18,500, which is eighty-four percent of the $22,036 internet offer through Cars.com, and in order to constitute consumer fraud as it relates to price, plaintiff would have to sell the vehicle to a consumer for double to triple the amount. They also assert there is a factual dispute as to whether the remaining balance owed is properly considered an ascertainable loss under the CFA or is more appropriately characterized as "a collection action for a payment of a partial amount owed to [p]laintiff." We are unpersuaded by these arguments.

N.J.S.A. 56:8-19 sets forth the ascertainable loss and causation elements of a CFA claim. The statute authorizes a remedy for "[a]ny person who suffers any ascertainable loss of moneys or property, real or personal, as a result of the use or employment by another person of any method, act, or practice declared unlawful under this act." N.J.S.A. 56:8-19. While "[t]here is little that illuminates the precise meaning that the Legislature intended in respect of the term 'ascertainable loss' in [the CFA]," our Court has held a private plaintiff seeking relief under the CFA "must produce evidence from which a factfinder could find or infer that the plaintiff suffered an actual loss." Thiedemann, 183 N.J. at 248. An ascertainable loss must be "quantifiable or measurable," but "it need not yet have been experienced as an out-of-pocket loss to the plaintiff." Id.

at 248-49 (citing <u>Cox</u>, 138 N.J. at 22-23).  "In cases involving breach of contract or misrepresentation, either out-of-pocket loss or a demonstration of loss in value will suffice to meet the ascertainable loss hurdle and will set the stage for establishing the measure of damages."  <u>Id.</u> at 248 (citing <u>Furst</u>, 182 N.J. at 13).

Here, the judge found plaintiff sustained an ascertainable loss which resulted from the Venture defendants' violations of the CFA.  The loss totaled $17,082.09, and consisted of:

> a. $3560[], the difference between the amount originally offered and accepted through Cars.com ($22,036[]) and the amount defendant Kopman agreed to pay plaintiff on July 19, 2018 ($18,500[]); and
>
> b. $13,275.75, the difference between the $18,500[] purchase price and $5,224.25, the payoff amount on July 19, 2018, the day of sale.
>
> c. $248.89, the amount of plaintiff's payment to the lender while waiting for the payment from defendants; and
>
> d. $20.45, the cost of tolls for traveling to [New Jersey] on September 25, 2018 in an attempt to get the check.

Notably, the Venture defendants do not dispute the amount of the loss plaintiff sustained.  We are convinced that plaintiff presented compelling evidence of a quantifiable and measurable out-of-pocket loss, which, under our Court's decision in <u>Thiedemann</u>, is sufficient to meet the ascertainable loss

18

requirement. 183 N.J. at 248. Therefore, there was no genuine issue of material fact warranting a trial.

The Venture defendants also claim the judge abused her discretion by utilizing the purchase price from the Cars.com offer when evaluating the transaction. First, they argue the judge erred in granting plaintiff damages in the amount of $3546, which is the difference between the accepted Cars.com offer and the amount Kopman agreed to pay plaintiff on July 19, 2018, because the contract for the sale was modified that day when Kopman made the $18,500 offer, which plaintiff accepted. Second, the Venture defendants claim the transaction did not violate the CFA because plaintiff agreed to sell the Nissan to them "for $18,500 which is [eighty-four percent] of the $22,036[] internet offer through [Cars.com]" and "in order for there to be consumer fraud as it relates to price . . . [p]laintiff . . . would have to sell the vehicle to a consumer . . . for double to triple the amount." Again, we reject the Venture defendants' arguments.

Specifically, the judge highlighted for the Venture defendants "[t]o argue that this is only a breach of contract case misses the mark" because while this case, like several cases cited by the court, could be characterized as a breach of contract, "do[ing] so would . . . ignore the reality and purpose of the CFA

statute."  Instead, the judge aptly characterized the case as one involving affirmative acts by the Venture defendants, which ultimately amounted to unlawful practices under the CFA.  The judge was correct in her analysis.

Further, the Venture defendants' argument pertaining to the change in pricing similarly is misguided.  Plaintiff did not "seek[] to prove only that the price charged was higher than it should have been as a result of [the Venture defendants'] fraudulent marketing campaign . . . ."  Rather, plaintiff claimed they engaged in a "bait and switch tactic of accepting [p]laintiff's offer and agreeing to purchase the [Nissan] for $22,036, then claim[ed] they knew nothing about that transaction[,] and then offer[ed] a lower price after the amount of $22,036[] was agreed upon by the parties."  Consequently, the Venture defendants' reliance on exorbitant pricing cases is misplaced, and the judge properly evaluated the transaction using the value of the Cars.com offer, which induced plaintiff to communicate with the Venture defendants in the first place.

## III.

"[F]ee determinations by trial courts will be disturbed only on the rarest occasions, and then only because of a clear abuse of discretion."  Rendine v. Pantzer, 141 N.J. 292, 317 (1995).  We award attorney's fees only where "expressly provided for by statute, court rule, or contract."  Litton Indus., Inc.

v. IMO Indus., Inc., 200 N.J. 372, 385 (2009) (quoting Packard-Bamberger & Co. v. Collier, 167 N.J. 427, 440 (2001)). Here, plaintiff is entitled to counsel fees under the CFA.

Fee determinations begin with the calculation of the lodestar, which is "the number of hours reasonably expended multiplied by a reasonable hourly rate." Rendine, 141 N.J. at 334-35. Counsel's hours must "be set forth in sufficient detail . . . ." Id. at 337. In turn, the trial court must "evaluate carefully and critically the aggregate hours . . . advanced by counsel for the prevailing party to support the fee application." Id. at 335. The "court should exercise its discretion to exclude from the lodestar calculation hours for which counsel's documentary support is marginal." Szczepanski v. Newcomb Med. Ctr., 141 N.J. 346, 368 (1995).

Hours that are "'excessive, redundant, or otherwise unnecessary'" are not reasonably expended, and should be excluded. Rendine, 141 N.J. at 335 (quoting Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir. 1990)). The court should compare the hours submitted to "those that competent counsel reasonably would have expended to achieve a comparable result." Id. at 336.

The trial court may also reduce the lodestar for partial or substantially limited success or grant a contingency enhancement "to reflect the risk of

21

nonpayment" in cases where the attorney's payment was substantially contingent upon a successful outcome. Id. at 336-37. "[T]he court must determine whether the expenditure of counsel's time on the entire litigation was reasonable in relation to the actual relief obtained, and, if not, reduce the award proportionately." Singer v. State, 95 N.J. 487, 500 (1984) (internal citation omitted).

Here, Judge Harz reviewed the itemized hours submitted by plaintiff's counsel, as well as the Venture defendants' objection, which the judge noted "was not specific to any of the time allocations or submissions submitted by [plaintiff's counsel]." And, the judge reduced the hourly fee requested, indicating she "carefully and critically" evaluated the rate to coincide with "the prevailing market rate in Bergen County for counsel representing plaintiffs in CFA litigation of similar skill, experience, and reputation." We do not find the result here to constitute a clear abuse of discretion based upon our review of the comprehensive and convincing analysis submitted by plaintiff.

The judge also applied a twenty-five percent fee lodestar enhancement to reflect plaintiff's success. To determine if a contingency fee enhancement is appropriate, the court must determine if the case was contingency based; whether mitigating the risk of nonpayment was possible by the attorney; and

whether the contingency of payment aggravated other economic risks. <u>Rendine</u>, 141 N.J. at 339. In her decision, the judge emphasized the "case was purely contingent, and plaintiff's counsel faced, and continues to face, a significant risk of nonpayment."

"[C]ontingency enhancements in fee-shifting cases ordinarily should range between five and fifty-percent of the lodestar fee, with the enhancement in typical contingency cases ranging between twenty and thirty-five percent of the lodestar." <u>Id.</u> at 343. However, there is no requirement that a fee enhancement be awarded in every case. <u>Saffos v. Avaya, Inc.</u>, 419 N.J. Super. 244, 277 (App. Div. 2011); <u>Gallo v. Salesian Soc'y, Inc.</u>, 290 N.J. Super. 616, 660 (App. Div. 1996). Here, the twenty-five percent lodestar enhancement tempered the risks involved with the subject litigation and allowed plaintiff to retain a law firm of "caliber" to pursue a claim of only $17,082.09. Therefore, we affirm the judge's twenty-five percent lodestar enhancement.

We conclude that the Venture defendants' remaining arguments—to the extent we have not addressed them—lack sufficient merit to warrant any further discussion in a written opinion. <u>R.</u> 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4641-19