**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3606-23

JULIA ROSE NAWROCKI,
individually and on behalf of all
others similarly situated,

      Plaintiff-Respondent,

v.

J&J AUTO OUTLET, trading as
AUTO CONCEPTS, MICHAEL
GARRO and JOE GALLO,

      Defendants-Appellants.

_____

      Argued September 11, 2025 – Decided November 25, 2025

      Before Judges Berdote Byrne and Jablonski.

      On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Camden County, Docket No. L-0221-23.

      Brian R. Griffin argued the cause for appellants (O'Toole Scrivo, LLC, attorneys; Kyle Vellutato and Brian R. Griffin, on the briefs).

      Lewis G. Adler argued the cause for respondent (Lewis G. Adler and Perlman DePetris Consumer Law LLC,

attorneys; Lewis G. Adler and Lee M. Perlman, of counsel; Paul DePetris, of counsel and on the brief).

PER CURIAM

Following leave to appeal, defendants challenge a trial court's order that awarded partial summary judgment to plaintiff on two counts of her twelve-count complaint and denied defendants' cross-motion for similar relief. In her complaint, plaintiff contends defendants—J&J Auto Outlet, trading as Auto Concepts, Michael Garro (Garro), and Joe Gallo (Gallo)—violated the Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -210, when they charged her a "document fee" for the purchase of a motor vehicle without itemizing it, in violation of the Automotive Sales Practice Regulations (ASP), N.J.A.C. 13:45A-26B.2 to - 26B.3 (count two). She also claimed defendants violated the New Jersey Truth-in-Consumer Contract, Warranty, and Notice Act (TCCWNA), N.J.S.A. 56:12-15 by offering and entering into a consumer contract that allegedly infringed upon "any clearly established legal right of a consumer or responsibility of a seller . . . under State or Federal law" (count five).

Following our de novo review, we find the trial court incorrectly concluded a regulatory violation alone represents a "per se" violation of the CFA that would entitle a plaintiff to a judgment under it. Such a finding is not consistent with our decision in Gross v. TJH Automotive Co., L.L.C., 380 N.J

2

Super. 176, 185 (App. Div. 2005) in which we held that a regulatory violation might be sufficient to satisfy one prong of the multi-factor test for a CFA violation.

Considering our decision in <u>Gross</u>, we are not convinced the trial court made sufficient findings on the question of whether the charged "document fee" that provided the basis for the judgment violated N.J.A.C. 13:45A-26B.3. Further, the trial court also did not address whether plaintiff proved an ascertainable loss, nor did it consider whether there was a causative link between any unlawful conduct and the ascertainable loss that would be required to support a judgment under the CFA. Therefore, we vacate summary judgment and remand this matter to the trial court to make findings as to whether the "document fee" charged violated N.J.A.C. 13:45A-26B.3 in light of our holding in <u>Gross</u>. If the court determines a violation occurred that satisfies the CFA, it must determine whether plaintiff suffered ascertainable loss and whether there is a causative link between the violation and the ascertainable loss.

A-3606-23

## I.

We glean the material facts from the summary judgment record and view that evidence in the light most favorable to the non-moving parties. See Comprehensive Neurosurgical, P.C. v. Valley Hosp., 257 N.J. 33, 71 (2024).

Plaintiff was interested in purchasing a pre-owned 2012 Dodge Ram from defendants. After she visited their dealership several times, she inspected the vehicle, test drove it, and negotiated a favorable price with the dealership's salesperson. Early in the process, defendants provided her with a contract titled "Buyer's Order" that listed the sale price and reflected two separate fees: a "title and license fee" of $145 and a $299 "document fee."

The Buyer's Order described the "title and license fee" as an estimated fee paid for clerical government compliance to transfer the vehicle. It also noted the exact amount would not be known until ownership was transferred. The Buyer's Order does not break down nor does it further describe the "document fee" that is listed as a single line item on that agreement.

Plaintiff retained the Buyer's Order for several days. Ultimately, she agreed to the purchase and a new Buyer's Order was prepared. Defendants used a third-party software program to generate the final documents that, according to defendants, ensured compliance with New Jersey regulations. The program,

however, did not permit the breakdown of fees beyond what appeared on the forms. Consistent with the original Buyer's Order, the new Buyer's Order listed the $299 "document fee" and a $145 license fee.[1] Plaintiff took delivery of the vehicle.

Plaintiff commenced a putative class action lawsuit by filing a 328-paragraph complaint asserting twelve separate causes of action against defendants. Specifically, she sought recovery under the "used car lemon law buyers guide" (count 1); classwide automotive sales practices (count 2); classwide automotive advertising practices (count 3); classwide consumer fraud violations (count 4); classwide TCCWNA violations (count 5); breach of contract (count 6); breach of the covenant of good faith and fair dealing (count 7); promissory estoppel (count 8); negligent delivery of a defective used car (count 9); relief under N.J.S.A. 2A:32-1, remedies of a person defrauded (count 10); classwide declaratory judgment (count 11); and claims against unnamed parties (count 11).

Pertinent to this appeal, and in the counts alleging violations of the CFA, she claimed the contract violated New Jersey regulations that required the itemization of the document fee. Specifically, she alleged the dealer charged a

---

[1] Plaintiff does not dispute the "title and license fee" was sufficiently itemized.

A-3606-23

flat "document fee" without specifying the services performed and their corresponding charges, if any. She also alleged the dealer failed to provide any contract or other supporting documentation describing the services covered by the fee.

Plaintiff accused defendants of violating the CFA through ASP regulation (N.J.A.C. 13:45A-26B.3) and Motor Vehicle Advertising Practices (MVAP) regulation (N.J.A.C. 13:45A-26A.4). Before discovery began, plaintiff moved to certify a class on three counts in the complaint. Defendants opposed the application and argued the Buyer's Order sufficiently itemized the document service fees and did not violate the ASP, the CFA, nor the TCCWNA. The trial judge granted preliminary class certification and observed:

> Plaintiff here was charged . . . $299 for the document fee. The [B]uyer's [O]rder does not contain a description of what the document fee involves. It is alleged that this violates the [ASP, N.J.A.C. 13:45A-26B.2].
>
> Here, the [] invoice does separately describe title and license fees, but the document fee is not explained. The statute really talks about pre-delivery services. The subpart 2 requires that pre-delivery services be itemized. The actual pre-delivery service which is being performed, and the price for each specific pre-delivery service.
>
> At this point, I understand the case is still in discovery. I don't know if the document relates to a pre-delivery

service at this point[.] But here we do have many [] hundreds and hundreds of invoices charging a document fee which at this stage no one has shown [] any itemization relating to that fee.

Before discovery was complete, plaintiff moved for partial summary judgment on counts two, three, and five. Defendants opposed and cross-moved for summary judgment to dismiss these same counts, arguing the Buyer's Order did not, on its face, violate any statute nor regulation.

In a written opinion, the trial court concluded the regulatory violations represented a "per se violation of the [CFA]" and granted plaintiff's summary judgment application on counts two and five. It found, as to count two:

> Whether the fee is called a document fee or a documentary fee in the [B]uyer's [O]rder, inclusion of such a fee without a description and itemization of what the fee includes is a per se violation of the [CFA]. Accordingly, summary judgment will be granted in favor of plaintiff and against defendant J&J Auto Outlet on count [two] of the complaint. Plaintiff has not provided sufficient information that would allow summary judgment to be entered also against defendants Garro and Gallo.

As to count five, the court determined that the alleged violation of the ASP was a statutory violation:

> Plaintiff asserts that the [B]uyer's [O]rder violat[ed] the TCCWNA because it included provisions that clearly violated established legal rights of the consumer. The court agrees that inclusion of a document fee without

7

itemization violates the TCCWNA. Accordingly, partial summary judgment will be granted with respect to [c]ount [five] as against defendant J&J Auto Outlet only.

Following defendants' request for reconsideration, the trial court vacated preliminary class certification as to count four of the complaint and confirmed summary judgment was denied on that count. The prior order remained unchanged as to the remaining counts.

Defendants sought leave to appeal the preliminary class certification order and the partial summary judgment order. Defendants argued summary judgment was improperly granted because plaintiff failed to demonstrate a violation of any regulation, suffered no ascertainable loss, and was not an "aggrieved consumer" under the CFA and TCCWNA. They also contended summary judgment was premature because discovery was incomplete. We granted leave, limiting our review to the trial court's partial summary judgment order on counts two and five of the complaint.

II.

We review a trial court's order on summary judgment de novo and apply the same standard used by the trial court. Boyle v. Huff, 257 N.J. 468, 477 (2024). "In ruling on a summary judgment motion, a court does not 'weigh the evidence and determine the truth of the matter'; it only 'determine[s] whether

there is a genuine issue for trial.'"  C.V. ex rel. C.V. v. Waterford Twp. Bd. of Educ., 255 N.J. 289, 305-06 (2023) (alteration in original) (quoting Rios v. Meda Pharm., Inc., 247 N.J. 1, 13 (2021)).  "To decide whether a genuine issue of material fact exists, the trial court must 'draw[] all legitimate inferences from the facts in favor of the non-moving party.'"  Friedman v. Martinez, 242 N.J. 449, 472 (2020) (alteration in original) (quoting Globe Motor Co. v. Igdalev, 225 N.J. 469, 480 (2016)).  If the "competent evidential materials presented, when viewed in the light most favorable to the non-moving party, permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party," the movant is not entitled to summary judgment.  Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995); see also Globe Motor Co., 225 N.J. at 480.  A court should grant summary judgment "[o]nly when the evidence is so one-sided that one party must prevail as a matter of law."  Petro-Lubricant Testing Labs., Inc. v. Adelman, 233 N.J. 236, 257 (2018) (quoting Brill, 142 N.J. at 540) (internal quotation marks omitted).

Here, the trial court incorrectly granted summary judgment when it determined the alleged violation of the regulation constituted a "per se violation" of the CFA and the TCCWNA.  Although a breach of a regulation may be sufficient to establish one element of the overall cause of action, to prevail fully

9

and to obtain a valid judgment, all elements must be satisfied—including, most fundamentally, proof of an ascertainable loss and that plaintiff is an aggrieved consumer. The record contains insufficient evidence about the nature and extent of plaintiff's loss or damages, if any, and similarly fails to substantiate plaintiff's status as an aggrieved consumer. These questions of fact, therefore, preclude summary judgment.

## III.

Consumers who suffer an ascertainable loss of money or property because of unlawful commercial practices may be entitled to a judgment and statutory damages under the CFA. Robey v. SPARC Group LLC, 256 N.J. 541, 548 (2024); Heyert v. Taddese, 431 N.J. Super. 388, 411 (App. Div. 2013). To obtain this relief, a plaintiff must prove three elements: (1) defendants engaged in unlawful conduct; (2) plaintiff suffered an ascertainable loss; and (3) there is a causal relationship between the unlawful conduct and the ascertainable loss. Robey, 256 N.J. at 555. A plaintiff who proves these elements is entitled to legal or equitable relief, treble damages, and reasonable attorney's fees. Romero v. Gold Star Distribution, LLC, 468 N.J. Super. 274, 302 (App. Div. 2021) (citing Lee v. Carter-Reed Co., LLC, 203 N.J. 496, 521 (2010)).

A-3606-23

A.

To obtain a judgment under the CFA, plaintiff must first demonstrate defendants engaged in unlawful conduct. Robey, 256 N.J. at 554-55. Actionable conduct may include not only defendants' affirmative acts and knowing omissions, but also might include their violation of the regulations promulgated under a statute. Id. at 555; Cox v. Sears Roebuck & Co., 138 N.J. 2, 17 (1994).

"Proof of a violation of a regulation promulgated under the CFA is enough to establish an 'unlawful practice'" pursuant to the first prong of the statute. Gross, 380 N.J. Super. at 185 (quoting Cox, 138 N.J. at 18-19). Here, the Buyer's Order listed a flat $299 "document fee" devoid of any explanation of what comprised it. Plaintiff claims defendants' failure to itemize this fee on the Buyer's Order constituted a "per se" violation of N.J.A.C. 13:45A-26B.3 and, therefore, satisfied the first prong of the CFA. Defendants disagree and argue they meet the regulatory requirements to permit the charge.

Prosecution of CFA violations is controlled by extensive regulation, including the ASP regulations. N.J.A.C. 13:45A-26B.1 to -26B.2. Part of these regulations concern the obligation of automobile dealers who provide "documentary service[s]" and who charge fees for this service. N.J.A.C.

13:45A-26B.1. A "documentary service" involves, but is not limited to, "the preparation and processing of documents in connection with the transfer of license plates, registration, or title, and the preparation of other documents relating to the sale or lease of a motor vehicle." Ibid. A "documentary service fee" means "any monies or other thing of value, which an automotive dealer accepts from a consumer in exchange for a documentary service." Ibid. The regulations do not define a "document fee" for which defendants charged plaintiff when she purchased the motor vehicle and that appears as a line item on the Buyer's Order.

According to the regulations, as it applies to any documentary service fee,

> (a) In connection with the sale of a motor vehicle, which includes the assessment of a documentary service fee, automotive dealers shall not:
>
> . . . .
>
> 2. Accept, charge, or obtain from a consumer monies, or any other thing of value, in exchange for the performance of any documentary service without first itemizing the actual documentary service, which is being performed and setting forth in writing, in at least 10-point type, on the sale document the price for each specific documentary service.
>
> [N.J.A.C. 13:45A-26B.3.]

We answered the question of whether an itemized and enumerated documentary service fee violated the CFA's administrative regulations in Gross, 380 N.J. Super. at 176. There, the plaintiff purchased a motor vehicle and was presented with a sales agreement that reflected two charges: "'[r]egistration/[t]itle fee' of $113.50 and a '[d]ocumentary fee' of $135.00, comprised of $67.50 representing a 'M.V. Messenger Service' and $67.50 representing a 'Clerical Expense.'" Id. at 181. In response to his inquiry about the propriety of both expenses, the dealership gave the plaintiff a document titled "DEALER DOC FEE" that "included thirteen items covered, including preparation of paperwork for registration and transfer of title, document recording, notarization and postage and handling." Ibid. The bottom of that document noted that "'for deals that do not require the entire amount of the fee to cover the . . . listed items, the balance will be credited as additional dealer income.'" Ibid. (omission in original). The plaintiff also "objected to the 'clerical fee' on the basis that his purchase did not involve a trade-in and required no document preparation related to financing or warranties." Ibid.

Under these facts, we concluded that the documentary service fee complied with the regulations because there was proper "itemization and enumeration of the documentary services [charged]" and further evaluated

13

"whether that itemization and enumeration was sufficient under the applicable regulations promulgated under the [CFA] which must be 'liberally construed as remedial legislation in favor or protecting consumers.'" Id. at 186 (quoting Delaney v. Garden State Auto Park, 318 N.J. Super. 15, 19-20 (App. Div. 1999)).

Here, the trial court did not evaluate the "document fee" defendants charged plaintiff in light of the standard established by Gross and whether it was sufficiently itemized to provide the detail required by N.J.A.C. 13:45A-26B.3. Instead, the court concluded that "whether the fee is called a document fee or documentary fee in the [B]uyer's [O]rder, inclusion of such a fee without a description and itemization of what the fee includes is a per se violation of the [CFA]." The court did not analyze nor consider the detail, or lack of it, of the charged fee. Therefore, the conclusion on which a decision that defendants engaged in unlawful conduct because it violated N.J.A.C. 13:45A-26B.3 was incorrect.

## B.

Even if we accept plaintiff has demonstrated a violation of a regulation, two more elements are necessary to establish defendants' ultimate liability under the CFA: (1) an ascertainable loss, and (2) a causative link between the ascertainable loss and the unlawful conduct. See Robey, 256 N.J. at 555;

14

Romero, 468 N.J. Super. at 302 (holding a plaintiff must establish all three elements of the CFA in order to establish a prima facie case for relief under it).

1.

A plaintiff must suffer an ascertainable loss. Robey, 256 N.J. at 559. "Notwithstanding the liberality of the construction afforded the CFA, ascertainable means ascertainable—'quantifiable or measurable'." Robey, 256 N.J. at 558 (quoting D'Agostino v. Maldonado, 216 N.J. 168, 185 (2013)) A loss cannot be "hypothetical [n]or illusory." D'Agostino, 216 N.J. at 185. A plaintiff may demonstrate ascertainable loss by showing an "out-of-pocket loss or the loss of the value of his or her interest in property[,]" or by demonstrating "that he or she has been deprived of the 'benefit of the bargain' because of a CFA violation." Id. at 190-91.

Because the record as it stands sheds no light on the question of whether plaintiff has demonstrated an ascertainable loss, summary judgment was inappropriate.

2.

The third element to a successful CFA claim requires plaintiff to prove the ascertainable loss resulted from defendants' unlawful conduct. Robey, 256 N.J. at 555. This element requires proof of a "causal relationship between the

A-3606-23

two." Ibid. Courts have generally found causation is established when a plaintiff demonstrates "a direct correlation between the unlawful practice and the loss" and "have rejected proofs of causation that were speculative or attenuated." Johnson v. McClellan, 468 N.J. Super. 562, 586 (App. Div. 2021) (quoting Heyert, 431 N.J. Super. at 421).

The causation requirement creates an insurmountable barrier when both ascertainable loss and unlawful conduct are absent. Bosland v. Warnick Dodge, Inc., 197 N.J. 543, 557 (2009) (holding each element of a prima facie CFA case "is found within the plain language of the statute itself" and "each is, without any question, a prerequisite to suit."). Failing to establish any single element is fatal to a CFA claim.

On this record, because none of the three required elements have been established, the judgment entered against defendants and in favor of plaintiff is infirm.

IV.

Additionally, we conclude the record does not support the trial court's conclusion that summary judgment should have been granted to plaintiff on the TCCWNA claim because plaintiff has not demonstrated she is an "aggrieved consumer." To state a claim under the TCCWNA, plaintiff must demonstrate:

(1) defendant is a seller, lessor, creditor, lender, bailee, or assignee; (2) "who, in writing, entered into a consumer contract or gave or displayed a consumer warranty, notice, or sign[,] (3) containing a provision that violates a consumer's 'clearly established legal right,'" and (4) plaintiff is an aggrieved consumer. Robey, 256 N.J. at 564 (quoting Pisack v. B&C Towing, Inc., 240 N.J. 360, 379 (2020); N.J.S.A. 56:12-15, -17).

An "aggrieved consumer" under the TCCWNA is "a consumer who has suffered some form of harm as a result of the defendant's conduct." Spade v. Select Comfort Corp., 232 N.J. 504, 522 (2018). The TCCWNA requires "a consumer to show that he or she has suffered harm, even if that harm does not warrant an award of damages, as a result of a violation of N.J.S.A. 56:12-15." Id. at 524. The Supreme Court recently clarified the term "aggrieved consumer" used in the TCCWNA is harmonious with the concept of "ascertainable loss" pursuant to the CFA. Robey, 256 N.J. at 549. Therefore, without proof of an ascertainable loss under the CFA, alleged violations of the CFA cannot form the basis of a violation of a "clearly established legal right" pursuant to the TCCWNA. Id. at 564-65. If a plaintiff's alleged harm pursuant to the TCCWNA is premised on the same allegations as a CFA claim, the court must find the plaintiff incurred an ascertainable loss of money or property pursuant to the CFA

to allow the TCCWNA claim to proceed. Ibid. As we noted above, the question as to whether plaintiff suffered any loss remains open. Consequently, plaintiff's judgment under the TCCWNA is similarly infirm.

V.

Finally, we find defendants' remaining argument persuasive that summary judgment should not have been granted because discovery was not complete. It is axiomatic that summary judgment is not appropriate before the party opposing the motion has the opportunity to complete discovery of relevant and material evidence necessary to defend against the motion, especially where "critical facts are peculiarly within the moving party's knowledge." Friedman, 242 N.J. at 472 (quoting James v. Bessemer Processing Co., 155 N.J. 279, 311 (1998)) (internal quotation marks omitted). Accordingly, when discovery on relevant and material issues is incomplete, summary judgment is usually inappropriate. Badiali v. New Jersey Mfrs. Ins. Grp., 220 N.J. 544, 555 (2015) (quoting Wellington v. Estate of Wellington, 359 N.J. Super. 484, 496 (App. Div. 2003)).

VI.

In sum, the trial court erred in granting summary judgment in favor of plaintiff because she failed to satisfy the necessary elements under the CFA and did not demonstrate that she was an aggrieved consumer under the TCCWNA—

18

both of which are required to support the judgment in her favor.  Therefore, we vacate the order for summary judgment and remand to the trial court specifically to consider whether the "document fee" charged is sufficiently itemized to satisfy N.J.A.C. 13:45A-26B.3(a)(2) and whether that detail comports with Gross.

Reversed and remanded.  We do not retain jurisdiction.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division